(Decided 10th December, 1891.)

MARTHA E. WILLS *vs.* J. WALTER CARPENTER.

*Contract of Renting—Agreement for Renting.*

The defendant wrote a letter to the plaintiff in which he said, my brother F. C. has some idea of renting your farm. If you and he can agree upon terms of third share as your rent, I will become the renter, and enter into contract with you; he to work

the farm. This letter was given by the defendant to his brother, and on the same day the plaintiff received it and replied to it, directing the reply to the defendant. It was received by the brother of the defendant; but there was no proof that the latter ever saw it. The plaintiff, in her letter to the defendant said, she would agree to terms of one-third rent, Mr. F. C. to cultivate her farm, and that she would be at home to negotiate with him on' the morrow. Mr. F. C. did not come on the morrow, but late in the evening of the day following. The plaintiff testified that she bargained with him in his brother's name for a third crop rent, and handed him a contract which she had with her outgoing tenant, saying it contained her terms, and that she would make any reasonable concession; that she gave him that form of contract for the purpose of having a contract of the same form signed by the defendant. HELD:

That the letters did not constitute a contract of renting between the plaintiff and defendant, but merely an agreement, upon a named condition, to enter into such contract.

APPEAL from the Baltimore City Court.

The case is stated in the opinion of the Court.

The cause was argued before ALVEY, C. J., ROBINSON, FOWLER, and MCSHERRY, J.

*Alexander H. Robertson*, and *William S. Bryan, Jr.*, for the appellant.

The following authorities were referred to: *Wheat, et al. vs. Cross*, 31 *Md.*, 99; *Tayloe vs. Merchants' Fire Insurance Co.*, 9 *Howard*, 390; *Stockham, Garnishee vs. Stockham*, 32 *Md.*, 197; *Mactier vs. Frith*, 6 *Wend.*, 118; *Howard vs. Daly*, 61 *N. Y.*, 362; *Wald's Pollock on Contracts*, 36; *Household Fire Insurance Co. vs. Grant*, 4 *Ex. D.*, 216; *Adams vs. Lindsell*, 1 *Barn. & Ald.*, 681; *Duncan vs. Topham*, 8 *C. B.*, 225; *Trevor vs. Wood*, 36 *N. Y.*, 309; *Bonnewell vs. Jenkins*, *L. R.*, 8 *Ch. Div.*, 70; *Gibbins vs. North Eastern Metropolitan Asylum*, 11 *Bevan*,

1; *Eadie vs. Addison,* 31 *Weekly Rep.,* 320; *Woodruff vs. Erie Railway Co., et al.,* 93 *N. Y.,* 609; *Farmers' Loan and Trust Co. vs. St. Joseph & Denver R. R.,* 3 *McCrary,* 247; *Cornish vs. Abington,* 4 *Hurl. & Nor.,* 549; *Continental National Bank vs. National Bank of the Commonwealth,* 50 *N. Y.,* 575; *Donovan vs. Firemen's Ins. Co.,* 30 *Md.,* 155; *Western Maryland R. R. Co. vs. Franklin Bank,* 60 *Md.,* 37; *Tome vs. Parkersburg Branch R. R. Co.,* 39 *Md.,* 36; *Hartshorn vs. Potroff,* 89 *Illinois,* 509.

*Thomas Ireland Elliott,* for the appellee.

Reference was made to the following authorities: *Ambler vs. Whipple,* 20 *Wall.,* 546; *Head & Amory vs. Prov. Ins. Co.,* 2 *Cranch,* 127; *Carr vs. Duval,* 14 *Peters,* 77; *Eliason vs. Henshaw,* 4 *Wheat.,* 225; *Tilley vs. County of Cook,* 103 *U. S.,* 155; *Foster vs. Ulman, et al.,* 64 *Md.,* 523; *Myers vs. Keystone Mut. Life Ins. Co.,* 27 *Pa. St.,* 268; *Taylor vs. Merchants' Fire Ins. Co.,* 9 *How.,* 390; *Stockham vs. Stockham,* 32 *Md.,* 208; 1 *Chitty on Contracts,* 15 (11*th Am. Ed.*)

McSHERRY, J., delivered the opinion of the Court.

There is but a single question involved in this case, and that question is: was there a contract entered into between the plaintiff and defendant for the renting by the latter of the farm of the former? Whilst there are three counts in the declaration, no attempt was made to sustain either the second or third, but the controversy was narrowed down to the first; and under that the plaintiff claimed to recover for the breach of a contract which will be stated presently. At the close of the plaintiff's case the Court ruled that there was no legally sufficient evidence to establish the contract relied on, and the judgment having been entered for the defendant, the plaintiff has appealed.

It appears by the bill of exception that the appellee wrote to the appellant the following letter:

Wills *vs.* Carpenter.

" Miss M. E. Wills: My brother, F. A. Carpenter, has some idea of renting your farm. If you and he can agree upon terms of third share as your rent, I will become the renter and enter into contract with you; he to work the farm. Very respectfully, J. Walter Carpenter."

This letter was given by the appellee to his brother who entrusted it to one Proctor for delivery to Miss Wills. Upon the same day Miss Wills received it and replied to it, handing her reply to Proctor, who gave it to a colored boy, who in turn subsequently, gave it to one of Frank A. Carpenter's children. Some days afterwards Frank A. Carpenter admitted to a witness that he had received a letter from Miss Wills; but there was no proof that the letter had gone into the possession of, or had ever been seen by, J. Walter Carpenter. Notice was given to the appellee to produce Miss Wills' letter, but he answered that he did not have it, whereupon its contents were proved by parol, subject to exception. According to the testimony of Miss Wills, and another witness who penned the letter at the dictation of the appellant, she acknowledged the receipt of J. Walter Carpenter's letter, and said "I would agree to terms of one-third rent, Mr. Frank Carpenter to cultivate my farm, and that I would be at home to negotiate with Mr. Frank Carpenter to-morrow." She further testified "the letter was written and directed to Mr. J. Walter Carpenter; Mr. Frank Carpenter did not come next day, but came on the twenty-eighth, late in the evening; I bargained with him in his brother's name for a third crop rent."

These two letters constitute all the evidence there is in the record as to the existence of a contract of renting between the appellant and the appellee. If these two letters, under the circumstances stated, form a contract, then one is proved—if they do not, then the ruling of the Baltimore City Court was correct.

It is perfectly well settled and familiar law, that a valid contract may be entered into by letters. When a proposal is sent by mail or otherwise, received, and accepted, and the acceptance is, in a reasonable time, mailed or sent by the same agency or means employed in the transmission of the proposal, the proposal and acceptance, if definite and unconditional, constitute a binding agreement between the parties. *Wheat, et al. vs. Cross,* 31 *Md.*, 99; *Stockham vs. Stockham,* 32 *Md.*, 208; *Mactier vs. Frith,* 6 *Wend.*, 118. And this is so even where it appears that the parties contemplated that the agreement should afterwards be reduced to a formal shape. *Cheney, et al. vs. The Eastern Transportation Line,* 59 *Md.*, 557. Where the terms disclosed by the letters are clear, unambiguous and explicit, they cannot be defeated or evaded by the mere superaddition of a provision looking to the subsequent preparation of a more technical contract covering the same subject-matter. *Bonnewell vs. Jenkins, L. R.*, 8 *Ch. D.*, 70. In a word, where the correspondence itself constitutes an agreement capable of being legally enforced, a proposal for a more formal contract will not be treated as superseding that agreement.

Did these parties, then, make any contract at all? Was there an assent of two minds to one definite subject? This inquiry is one of law and must be answered by the letters before us. The subject-matter of the alleged contract was the renting of a farm. The appellee's brother had some idea of renting it, and the appellee— because possibly more responsible financially—proposed to become the renter and to enter into a contract with Miss Wills, if she and Frank A. Carpenter could agree upon the proportion of the crops to be paid as rent, Frank A. Carpenter, however, to cultivate the farm. This was manifestly only a conditional offer. The appellee said, "I will become the renter and enter into contract with you" upon one condition, and that condition

is, that you and my brother can agree upon one-third of
the crops as rent. Instead of waiting to see Frank A.
Carpenter, the appellant by her letter at once agreed to
the rent, and then added, that she would be at home the
next day to negotiate, not with the appellee who had
stated his willingness to enter into a contract with her,
but with Frank A. Carpenter, who was to cultivate the
land, but was not to be the tenant. As Miss Wills at
once agreed to the rent there was nothing for her to
negotiate with Frank A. Carpenter, because, by the
terms of J. Walter Carpenter's letter, the amount of the
rent was the only subject upon which J. Walter Carpen-
ter authorized his brother to agree with Miss Wills.
The single preliminary term, respecting the amount of
the rent, having been settled by J. Walter Carpenter
and Miss Wills, they were in a condition to consider
and arrange the terms and stipulations of a contract
which both of them contemplated should be made.
Taking these two letters together what contract do they
evidence? At most but an agreement that J. Walter
Carpenter *would* become the renter of the farm, and *would*
enter into a contract for that purpose with the appellant,
if she and Frank A. Carpenter could agree, not upon all
the conditions, but upon the share to be paid as rent.
But upon what terms? For how long? Or upon which
or how many of the numerous and ordinary stipulations
usually inserted in a contract of renting when the rent
rendered is a share of the crops? That the thing was
incomplete—merely in treaty—and was understood by
Miss Wills to be so, is made perfectly apparent by her
evidence; for she testified that she handed Frank A.
Carpenter "a contract which I had with my outgoing
tenant, Butler, and said it contained *my terms*, and that
any reasonable concession I would make. . . . . . I gave
him that form of contract for the purpose of having a
contract signed by J. Walter Carpenter of the same

form.'' The condition upon which the proposal to rent was founded having been accepted, both parties evidently understood that a contract actually renting the farm to J. Walter Carpenter was to be drawn and executed, but the terms of such a contract were never agreed to by them. The letters do not constitute a contract of renting, but merely an agreement, upon a named condition, to enter into a contract of renting—an agreement to make a contract, the terms and conditions of which had not even been discussed or considered, much less settled or arranged. Even the terms set forth in the Butler agreement, which is not in the record, are not shown to have been assented to, nor does the appellee appear ever to have heard of them. Under such circumstances, and assuming that the facts stated constitute such a delivery of Miss Wills' letter as would bind J. Walter Carpenter, it is impossible to say that a definite, complete agreement of renting has been entered into. Lord WESTBURY said in *Chinnock vs. Marchioness of Ely*, 4 *D.*, *J. & S.*, 638, ''I entirely accept the distinction . . . . that if there had been a final agreement and the terms of it are evidenced in a manner to satisfy the Statute of Frauds, the agreement shall be binding, although the parties may have declared that the writing is to serve only as instructions for a formal agreement, or although it may be an express term that a formal agreement shall be prepared and signed by the parties.'' Then he goes on, ''But if to a proposal or offer an assent be given subject to a provision as to a contract, then the stipulation as to the contract is a term of the assent, and there is no agreement independent of that stipulation.'' And to the same effect is *Winn vs. Bull*, *L. R.*, 7 *Ch. D.*, 29. Certainly, therefore, if the proposal be a mere offer to make a contract whose terms are not even suggested, the acceptance and the proposal together can not constitute a contract with defined terms; but only an agreement to

make a contract whose terms are to be subsequently fixed upon.

The cases relied on in the very able arguments of the counsel for the appellant were decided on very different facts from those now before us. Thus in *Gibbins vs. North Eastern Metropolitan Asylum District,* 11 *Bevan,* 1, there was a direct offer to purchase certain premises at a fixed sum. The answer was, "we accept your offer. If you approve of the enclosed, sign the same, and we will on receipt of the deposit sign you a copy." The enclosure was a more formal contract. Lord LANGDALE, Master of the Rolls, in speaking of the formal contract enclosed, asked, "Is it to contradict the first part of the letter? Does it mean we accept the offer, but reject it unless you sign the enclosed memorandum; or, rather, is it not an acceptance, and a proposal of a more formal mode of carrying the acceptance into execution? If the latter be the meaning, then, according to the authority produced, this would not destroy the contract." The offer and acceptance made a complete contract, and the acceptance having been unconditional, could not be nullified by an independent request that a formal memorandum should be signed. And the same is true of the case of *Bonnewell vs. Jenkins, L. R.,* 8 *Ch. D.,* 70; and of the case of *Cheney vs. The Eastern Transportation Line,* 59 *Md.,* 557. And in *Eadie vs. Addison,* 31 *Weekly Rep.,* 320, PEARSON, J., observed, "Here I have the case of a letter written containing more plainly than most letters do all the terms of the lease," and he refused to read the offer in such a way as to defeat that offer altogether.

For the reasons we have given and upon the adjudged cases cited, we are of opinion that the ruling of the Baltimore City Court was correct, and its judgment must be affirmed.

*Judgment affirmed, with*
*costs in this Court, and*
*in the Court below.*

(Decided 10th December, 1891.)