(Decided June 29th, 1898.)

---

## GEORGE B. HAND, Assignee of ELWOOD S. HAND *vs.* THE EVANS MARBLE COMPANY OF BALTIMORE CITY.

*Privity of Contract—Assignment of Liability—Liability of Corporation under Contract made by a Firm whose business it takes—Contract by Correspondence—Finality of Agreement.*

No one can be sued for a breach of a contract to which he was was not a party.

If a person who has contracted to do work for another assigns the contract without the consent of the other party to the defendant, the latter is not liable in an action for breach of the contract.

By a contract in writing between the firm of E. & Son and a publisher, the former agreed to pay a sum of money for an advertisement inserted in the publisher's book, but it was stipulated that the amount should only be deducted from the price of new work. Afterwards the E. Co. was formed to take over the business of E. & Son, and was sued upon the contract by the assignee of the publisher. *Held*, that the E. Co. was not liable to the plaintiff upon the contract so made by E. & Son.

When negotiations between parties looking to the formation of a contract take place by correspondence, many letters being exchanged, and at a certain point an agreement seems to have been reached, still such agreement will not be held to constitute a final contract when the succeeding letters between them show that they did not intend to abide by such terms as a complete expression of their intention.

Appeal from Baltimore City Court (PHELPS, J.).

The cause was argued before McSHERRY, C. J., BRYAN, FOWLER, BOYD and PEARCE, JJ.

*Thomas Mackenzie* (with whom was *John V. L. Findlay* on the brief) for the appellant.

*Thos. Ireland Elliott,* for the appellee.

PEARCE, J., delivered the opinion of the Court.

There are two questions for determination in this case. The first of these is, whether the defendant is liable to the plaintiff upon its assumption of certain obligations of William H. Evans & Son, to whose business the defendant succeeded; and the second is, if not so liable by reason of such assumption, whether any new and independent contract for the doing by defendant of certain work was ever entered into between the defendant and the plaintiff's assignor, under which recovery can be had in this action.

Wm. H. Evans & Son were contractors largely engaged in the supply of materials and the performance of marble and tiling work for public buildings and private residences throughout the country; and Elwood S. Hand of New York City was a publisher of advertising books descriptive of such buildings, and of the business and workmanship of those employed in their construction. In September, 1891, Wm. H. Evans & Son entered into four separate contracts in writing with Elwood S. Hand, two being made September 5th for the payment by them of $265 on each contract for the publication of a

certain advertisement in Hand's book; the other two being made September 18th for the payment by them of $285 on each contract for the publication in like manner of a certain other advertisement. There was no time fixed for any of these payments but the two contracts first mentioned, bore beneath the signature the words "payable as over," and there was endorsed upon each the following stipulation: "The within named amounts is available as a credit, and is to be deducted from our price for work, *other than we have estimated upon, or contracted for, prior to the date hereof.* In event of the said work not being given us, we are to be absolutely acquitted of any charge for this advertisement." The two contracts last mentioned were subject to the following condition, embodied therein just before signature. "This amount is only applicable, and is to be deducted from the price of new work."

On May 1st, 1892, the firm of Wm. H. Evans & Son was dissolved, and the Evans Marble Company was incorporated with a capital stock of $100,000, *part of which* was represented by the machinery, fixtures and stock in trade of Wm. H. Evans & Son. On November 9th, 1895, Elwood S. Hand undertook to assign in writing the four contracts mentioned to George B. Hand. The correspondence out of which this suit grew commenced in October, 1894, and the suit was instituted in August, 1896. The record shows that in a letter dated December 3d, 1894, the Evans Marble Company stated to Elwood S. Hand that it had succeeded Wm. H. Evans & Son and "is responsible for any agreements entered into by them." There is but one count in the declaration in which the plaintiff sets out at length the four contracts mentioned and their assignment to him, and also avers an agreement between the defendant *and plaintiff's assignor* for the doing by defendant of certain work upon a house at Southport, Connecticut, belonging to the wife of plaintiff's assignor for the sum of $1,161.55, in pursuance of the original contracts, and then set forth the assignment to him of this last-mentioned agreement. He further averred that his assignor

did and performed everything required of him, but that defendant refused to perform said work at Southport or to pay the said several sums of $265 and $265, $285 and $285, aggregating $1,100 in accordance with the original contracts, and claimed damages for these breaches of contract.  At the close of the testimony the Court ruled that there was no legally sufficient evidence to establish any liability of the defendant, from which ruling this appeal is taken.  In reference to the first question presented, the general rule has long been established that " one who is not a party to a contract cannot be included in the rights and liabilities which the contract creates, so as to enable him to sue or be sued upon it."  " A man cannot incur liabilities, and, again, a man cannot acquire rights from a contract to which he is not a party."  *Anson on Contracts*, 197.  Or, as stated elsewhere, " This rule embodies the principle, in whatever words expressed, that rights founded on contracts belong to the person who has stipulated for them, and to no other."  *Dicey on Parties to Actions*, 78.

No one can assign his liabilities under a contract without the consent of the party to whom he is liable, and even where this consent is given, Anson observes (page 205) that " this is in effect, the rescission by agreement of one contract, and the substitution of a new one, in which the same acts are to be performed by different parties; " and the same is expressed also in *Dicey on Parties to Actions*, 223-234.  These fundamental prinples have been abundantly illustrated in familiar decisions.  An illustration of the inability of one to sue on a contract to which he is not a party is found in *Schmaling* v. *Tomlinson*, 6 Taunton 147, where M. was employed by the defendants, X. & Co., to carry certain goods for them.  M. delegated the employment to A. the plaintiff, who carried the goods without any communication with X. & Co.  It was held that A. could not sue X. & Co. for the work done by him, " since there was no privity between the plaintiff and the defendants. The defendants looked to M. only for the performance of the work, and M. had a right to look to them for pay-

ment, and no one else had." So also where defendants who had been in the habit of dealing with B., sent a written order for goods directed to B.; the plaintiff, who on that day had bought B.'s business, executed the order without notice to defendants. It was held that plaintiff could not maintain an action for the price of the goods against the defendant, BRAMWELL, B., saying: " As to the difficulty that the defendants need not pay anybody, I do not see why they should, unless they have made a contract either express or implied." *Boulton* v. *Jones*, 2 H. & N. 564. If in that case defendants had accepted the goods with knowledge of the facts, doubtless they would have been held liable upon an implied assumpsit.

In *National Bank of St. Louis* against *The Grand Lodge of Missouri*, a Masonic Association, issued bonds, some of which were in the hands of the creditors, and the Grand Lodge, by resolution, assumed payment of these bonds, provided stock to an equivalent amount was issued by the Association to the Grand Lodge, which was done, and the bank, as the holder of such bonds, sued the Grand Lodge for payment of coupons accompanying their bonds, and it was held the action could not be maintained, the Court saying: " There is an insurmountable difficulty in the way of the plaintiff's recovery. The resolution of the Grand Lodge was but a proposition made to the Masonic Hall Association, and, when accepted, the resolution and acceptance constituted at most only an executory contract *inter partes*. It was a contract made for the benefit of the association and of the Grand Lodge, made that the latter might acquire the ownership of the stock of the former, and that the former might obtain relief from its liabilities. The holders of the bonds were not parties to it, and there was no privity between them and the lodge." *Nat. Bank* v. *Grand Lodge*, 98 U. S. 123. Approved in *Keller* v. *Ashford*, 133 U. S. 620.

It is therefore quite apparent, we think, if the declaration is to be regarded as contended by the appellee, as upon the contract made with Wm. H. Evans & Son,

that no action can be maintained against the Evans Marble Company for want of privity between them and the plaintiff.

But assuming, without deciding, that the declaration can properly be regarded as upon a new contract with the Evans Marble Company for the performance of work upon the same terms as those specified in the original contracts, and that plaintiff was entitled to sue thereon in virtue of his assignment, we come to the question whether any such new contract was ever entered into.

There could be no question of the right of the plaintiff's assignor to recover for the breach of such new contract when its existence and the breach are established, nor that where a contract is negotiated through the medium of correspondence the bargain is complete as soon as the letter is mailed, containing notice of acceptance, provided both offer and acceptance are unconditional, and provided no notice of withdrawal of the offer is received before mailing the acceptance. *Tayloe* v. *Merchants Fire Ins. Co.*, 9 Howard (U. S.) 390; *Wheat* v. *Cross*, 31 Md. 103; *Wills* v. *Carpenter*, 75 Md. 80.

The appellant claims that the letter of November 21st, 1894, from the defendant to L. M. Harris, repeating the offer made to Wilson Eyre, and Harris' letter of November 24th, 1894, accepting the same in behalf of his principal, Elwood S. Hand, made a completed contractual obligation on the part of the one to give the work, on the part of the other to do it at the figure named. If these two letters closed the negotiation, they would establish a new contract between the defendant and Elwood S. Hand, but it is not possible to read the succeeding letters in this correspondence without perceiving that no final agreement had been reached between the parties, which directly contemplated, and resulted in, any obligation, and without the concurrence of the two elements of agreement and obligation, no legal contract can exist. " That the thing was incomplete, merely in treaty," and was so understood by Hand, is made perfectly apparent by the subsequent letters, which show that the parties had not then, and never

did, bind themselves to deal on the terms which appeared on the face of those letters. The very next letter from the defendant to Harris, November 27th, 1894, asks who Hand is and what is his business, as he is unknown to them. The reply to this is from Hand himself, under date of November 30th, in which he appears for the first time in connection with the alleged contract, and he notes that the acceptance by his superintendent, Harris, of defendant's tender, "was agreeably to my original instruction, addressed to Wm. H. Evans & Son, notwithstanding it was made over the signature of the Evans Marble Company"; and he added that he deemed it desirable to have a thorough understanding before the work ordered was executed, and then states that he proposes to apply the credits provided for in his original contracts in part payment of the work ordered, and desires to know if this would be agreeable to defendant. Up to this point it is clear that defendant in its offer (or tender, as Hand calls it) had no knowledge of the original contracts, and contemplated payment wholly in money. After receiving Hand's letter of November 30th, and subsequently on December 6th, the copies of contracts with W. H. Evans & Son, defendant, on December 11th, wrote Hand that these contracts did not contemplate business taken in the ordinary course, but new work admitting of sufficient margin added thereto to cover them. Several letters followed dealing with this aspect of the subject, until finally on January 7th, 1895, defendant wrote to Hand: "In order to arrive at some settlement of the matter, we will agree to furnish the marble, and set in place, for the sum of $1,718.55, and deduct therefrom the full amount of the contracts. This practically leaves us at a loss in the transaction. *If this will be entirely satisfactory to you,* kindly advise us." To this no reply was made, but after ineffectual efforts to arrange a personal interview, Hand, on June 5th, 1895, wrote defendant reciting its offer to do the work for $1,718.55 on the terms stated in the letter of January 7th, 1895, and said: "*Before acting in this matter,* I want your assurance that the contracts

which I hold are fully acknowledged; whatever settlement is effected, I want to be final." To this defendant on June 8th replied, repeating the proposition to do the work for $1,718.55, all the contracts referred to, to be deducted therefrom, and adding: "*If you conclude to place the job in our hands according to the above understanding,* kindly oblige us with references for the balance which will be due us under this contract." To this Hand never replied. He did call on the vice-president of the Evans Marble Company in November, 1895, and demanded that the work should be done for $1,161.55, which demand was refused; and again, in February, 1896, he called at the office of the company, and in behalf of the plaintiff, to whom he had then executed an assignment of all the contracts, repeated his demand that the work should be done for $1,161.55, and tendered the contracts, and the difference in cash, as payments in advance, which demand was again refused, and this suit was subsequently instituted. E. S. Hand, while negotiating through Eyre and Harris, either purposely suppressed or negligently failed to make any reference to the existence of the contracts which he claimed the right to use in payment for the work, and it is clear from all the proof, that defendant's offer of $1,161.55, contemplated a cash transaction while Hand was secretly relying upon his contracts with W. H. Evans & Son, as entering into the arrangement. There was therefore no meeting of the minds of the parties up to that point, and no valid contract for the performance of the work proposed to be done. As soon as Hand disclosed his position, defendant submitted a proposition based upon that disclosure, which Hand took into consideration but never accepted, and hence no contract was ever made with defendant, and no recovery can be had in this action. *Winn* v. *Bull, L. R.,* 7 Ch. D. 29; *Wills* v. *Carpenter,* 75 Md. 86.

The question of the measure of damages might be one of interest, if material in the case but in view of our conclusions it need not be considered.

For the reasons we have given, and upon the ad-

judged cases cited, we are of opinion that the ruling of the Baltimore City Court was correct and its judgment must be affirmed.

*Judgment affirmed with costs, in this Court and in the Court below.*

(Decided June 29th, 1898.)