# J. H. DUKER BOX CO., *vs.* ROBERT B. DIXON,
## USE, ETC.

*Letters held not to constitute a complete Contract.*

After a conversation relating to the sale of lumber, the seller wrote to the buyer saying that he accepted the order for a designated quantity of lumber of certain sizes at a certain price deliverable in certain months. The buyer replied saying that this letter did not state that the sale was subject to the usual wharfage and inspection charges, which the writer had mentioned in conversation, and that the booking of the order regarding time of delivery and price was correct. To this, the seller answered that in regard to wharfage and inspection charge, "we know this in case of an inspection, but we do not think you will require this." The buyer replied that an inspection would be necessary, also that if the lumber was not consigned to a certain point, a transfer charge would fall on the seller. *Held,* that these letters do not constitute a final con

tract of sale, since the parties had reached no agreement as to the wharfage and inspection charges, mentioned by the buyer in reply to the offer of sale.

*Decided April 24th, 1907.*

Appeal from the Superior Court of Baltimore (NILES, J.)

The cause was argued before BRISCOE, BOYD, PEARCE, SCHMUCKER, BURKE and ROGERS, JJ.

*Francis T. Homer* and *Dallett H. Wilson* (with whom was *Geo. R. Willis* on the brief), for the appellant.

This case comes clearly within the ruling in *Joseph Brothers Company* v. *The Schoenthal Iron and Steel Company,* 99 Md. 382. In that case the Court, after stating the facts, states as follows: "In point of fact this series of letters consisted of propositions and counter-propositions, and nowhere brought the parties to a distinct and definite conclusion. Various terms were suggested, but the minds of the parties ultimately never met and in this particular the case is not unlike that of *Johnson* v. *Corbett,* 95 Md. 746." Again, the Court says: "With no distinct agreement as to the time of payment and with no assent to the new term suggested in the letter of the 10th, in regard to the rails being taken from the main track and not from the sidings, it is impossible to conclude that there was a definite agreement evidenced by these papers." See also of *Hand* v. *Evans Marble Company,* 88 Md. 226; *Winn* v. *Bull,* L. R. 7 Ch. 29; *Bristol* v. *Bread Co.,* 44 Ch. Div. 616; *Hussey* v. *Horne-Payne,* 4 App. Cas. 311.

*R. E. Lee Marshall* and *Philip A. Carroll,* for the appellees.

Reading the letter of March 21st as an ordinary business communication between merchants, whose "business relations are mutually satisfactory," it can only be construed as a friendly explanation of the reasons which induced the appellant to make provisions in the contract for an inspection, and so read, it is obviously an answer to that part of the letter of the appellees only, which expresses the hope that the appel-

lant will not find it necessary to exercise its conceded right under the contract to order an inspection.

It assumes the existence of the right, and explains the proposed manner of its exercise and the reasons therefor. If further evidence were required that the appellant regarded the contract as finally consummated, it will be found in the concluding paragraph of the letter above quoted, in which specific shipping instructions are given for the consignment of the lumber.

If the appellant had still considered the contract open in respect to a material term, it is clear that it would not then have given directions for shipping the lumber, which were, at least, premature, unless the parties had agreed.

Moreover, the fact that, after the appellant's letter of the 21st of March, no further communication of any description passed between the parties until more than two months later, when the time for the performance of the contract had arrived, and when the appellant had been notified of the readiness of the assignees of the contract to begin delivery, is the strongest evidence that both parties considered that they had reached a complete agreement upon all the terms of the contract.

That the appellees so understood is clear from the steps taken by them to perform the contract, the witness Fountain testifying that, upon the receipt of the appellant's letter of March 21st, the appellees turned the contract over to Taliaferro and Company (the equitable plaintiffs) to fill. And if, in fact, the appellant expected a further communication from the appellees in reply to its letter of the 21st, and understood the contract to remain open pending the receipt of such a reply, ordinary business principles would have impelled it to make some inquiry as to the meaning of the appellees' silence, and failure to act upon the last and only subject necessary to conclude the pending negotiations.

But, instead of this, we find that more than two months later, when the lumber is tendered to them under the contract, the appellant writes that the appellees "not having answered our last letter to them, we came to the conclusion that they did not intend to book our order."

It is submitted that the facts and circumstances surround-
ing the transaction wholly refute the statement of the appel-
lant above quoted, and that its refusal to receive the lumber
was, in fact, due to its desire to put an end to a contract that
had become unprofitable; and in this connection, the testi-
mony of the appellant itself is referred to, the witness Duker
testifying on cross-examination, that the price of lumber
was lower at the time he repudiated the contract than it
was at the time the contract was entered into, and that at
the time the lumber was deliverable, he could buy it
cheaper.   This construction is in harmony with established
principles of interpretation, as it is well settled by authority
that an acceptance is not conditional merely because it con-
tains inquiries whether offerer will change his terms, or ex-
presses a hope or suggestions, as to future acts.   9 *Cyc. Law
and Pro.*, 269; *Ibid*, 290; *Wald's Pollock on Contracts*, (Will-
ston's ed.) 45; *Phillips & Moore*, 71 Me. 78; *Eng. and Foreign
Credit Co.* v. *Arduin*, L. R. 5, H. L. 64; *Brown* v. *Cairns*,
63 Kansas, 693.

ROGERS J., delivered the opinion of the Court.

This is an appeal from the Superior Court of Baltimore
City.   Suit was instituted in that Court by the appellees to
recover damages for an alleged breach by the appellants of a
contract made by them for the purchase of a large quantity of
lumber from the appellees.   The breach consisted in the re-
fusal of the appellants to take the lumber when notified by
the assignee of the appellees that the lumber was ready to
be shipped.

The appellants pleaded the general issue pleas.   Upon is-
sues joined the case went to trial before a jury, and during
its progress there were three exceptions reserved to the rul-
ings of the Court; and the questions with which we have to
deal are set forth in the bills of exception contained in the
record.

The fundamental question lying at the root of the whole
controversy is; Was there a contract between the parties at

all?  On the part of the plaintiffs, appellees here, it is insisted
that there was, and that it is evidenced by certain writings;
namely a series of letters passing between the parties plaintiff
and defendant.   Upon the hypothesis that these writings evi-
dence the whole contract between the parties with respect to
the sale by the one and purchase by other of a large quantity
of lumber, the first prayer of the plaintiffs, appellees, was
framed.   If that hypothesis was erroneous the Court below
was clearly wrong in granting the plaintiff's first prayer.   If
the contract was evidenced only by the written papers referred
to their construction was for the Court.   Inasmuch as the
appellees' theory was founded on the assumption that the
writings alone evidenced the contract, it will be necessary to
set out these writings and briefly examine them.

Early in March, 1904, Alexander Fountain, one of the
members of Robert B. Dixon & Company, called on appel-
lant, defendant below, and offered to sell him certain quantities
of lumber to be of certain agreed dimensions, qualities and
prices.   No memorandum was taken at the time of this inter-
view, and, according to the testimony of Mr. Fountain, after
returning to his office, he wrote in a few days the following
letter to the appellant, the J. H. Duker Box Company.

Easton, Md.
March 11th, 1904.

Mr. J. Edward Duker,
      Baltimore, Md.
Dear Sir:

We have your order 4–4 Va. edge box 6, 8 and 9 inches at
$13.00 for 200,000 feet, deliverable on or about July first; 4–4
x10 Va. box at $14.00 for 100,000 feet, deliverable sometime
during the month of June; 4–4x12 Va. box at $16.00 for
100,000 feet deliverable in July.   We accept the above offer
and will try to get the lumber delivered at times named, al-
though we cannot be held down to a few days delay, but will
try and be as prompt as possible.   Of course we expect this
to be a cash offer all at a cash price subject to no discount.
Thanking you for the order and hoping that you will ac-
knowledge same, we are,
Very truly yours,
Robert B. Dixon & Co.

Receiving no answer on March 16th, 1904, he wrote as follows.

> Easton, Md.
> March 16th, 1904.

Mr. J. Edward Duker,
        Baltimore, Md.
Dear Sir:

Please advise us by return mail if our offer to you on lumber was satisfactory, as we want to know about booking the order, and oblige.

> Yours very truly,
>        Robert B. Dixon & Co.

> Baltimore, March 17th 1904.

Mess. Robert B. Dixon & Co.,
        Easton, Md.
Gentlemen:

We have yours of the 16th in reference to your letter of the 11th inst. We have been receiving a discount of 2 per cent, for cash, but as we did not mention that, will waive that, but you did not state in your letter "subject to usual wharfage and inspection charges" which writer mentioned to you. With that exception the booking of our order regarding time of delivery and price is correct.

> Very truly yours,
>        J. H. Duker Box Co.
>        J. Edward Duker,
>                President.

> Easton, Md.
> March 19th 1904.

Mess. J. H. Duker Box Co.,
        Baltimore, Md.
Gentlemen.

We are in receipt of your favor of the 17th inst., wherein you accept our offer as per our letter to you of the 11th inst., and you state in your letter that the lumber will be subject to usual *wharfage* and *inspection* charges. *Of course, we knew this in case of an inspection*, but we do not think you will require this. Of course, any lumber that does not come according to order, then an inspection will be in order, but as we expect to ship a great deal of this lumber to you in cars direct from our station in Virginia, we think that we can put it to you in good shape this way, and we would like to know the point you desire it consigned to, so we will have no trouble on this score.

Thanking you, and trusting that our business relations will be mutually profitable and satisfactory, we are,

Very truly yours,

Robert B. Dixon & Co.

Baltimore, Md.,

March 21st, 1904.

Mess. Robert B. Dixon & Company,

Easton, Md.

Gentlemen :—

We have yours of the 19th inst. regarding inspection. Wish to say that it will be necessary in order to determine quantity of lumber received, and number of feet of mill culls, if any. As the price of mill culls is $2.00 per thousand less than box there might be a doubt in your mind if we did not have inspection made by a disinterested person. Inspectors are appointed, licensed and fees fixed by our "Lumber Exchange" and are therefore disinterested. Our shipping point by rail is "City Block, Pennsylvania Railroad." If City Block is omitted when consigning car there would be a charge of $3.00 for transfer to that point, which would fall upon you.                    Very truly yours,

J. H. Duker Box Co.

It was proved that this letter of March 21st, 1904, was the last letter passing between the parties relative to the contract. On May 24th, 1904, the following letter passed: .

Easton, Md.,

Mess. J. H Duker Box Co.,          May 24th, 1904.

Baltimore, Md.

Gentlemen :—

Referring to our conversation with you over the the phone yesterday, we enclose you herewith all the correspondence relative to order for 400,000 feet of box boards. We think it is clear as daylight that you have given the order and we have accepted it, and we know of no letter wherein we have omitted to answer that has any bearing in the case whatever. Please let us hear from you and oblige.

Yours very truly,

Robert B. Dixon & Co.

Baltimore, June 2nd, 1904.

Mess. Robert B. Dixon & Company,

Easton, Md.

Gentlemen :

In reply to yours of May 24th wish to say, as you did not

answer ours of March 21st, we came to the conclusion that the charge for inspection did not meet with your approval, and that you had succeeded in obtaining a better price from some one else, and therefore ignored the letter.   We did not consider then that you had an order, nor do we now consider you have.

Very truly yours,

J. H. Duker Box Co.

This alleged contract was turned over to Taliaferro & Co. of Virginia, Lumber Dealers, by Robert B. Dixon & Co. Taliaferro & Co. wrote to J. H. Duker Box Co. advising it of said transfer and signifying their readiness to ship lumber but receiving no reply wrote again to J. H. Duker Box Co. and received the following letter :

Baltimore, Md.,

June 2, 1904.

Mess. Taliaferro & Co.,

Richmond, Va.

Gentlemen :

Replying to yours of May 30th, wish to say that Mess. Robert B. Dixon & Co. not having answered our last letter to them, we came to the conclusion that they did not intend to book our order for the 4-4 Va. edge Box, to be 6 ft., 8 ft., and 9 ft. wide, and, the 4-4x10 ft. and 12 ft. Va. Box.

We do not intend to receive any shipment from them and have so informed them.

Very truly yours,

J. H. Duker Box Co.

These are all of the letters passing between Dixon & Co. and the Duker Box Co. bearing upon the contract.   It further appears from the testimony of the witness Fountain, that not only was the fact that the appellee had transferred the performance of this alleged contract to Taliaferro & Co. of Richmond, Va., unknown to the appellant, but, further, the undisputed testimony of Mr. Fountain clearly shows that he never obtained the consent of the appellant to such transfer.

The undisputed testimony is to the effect that not only did the appellant not know that this contract had been transferred nor had they ever heard of the firm of Taliaferro & Co.

The question presented is was there a contract between the parties ?

At the close of the appellees' case, the appellant offered the following prayer: The defendant prays the Court to instruct the jury, that there is no legally sufficient evidence in this case to establish any liability on the defendant under the contract sued upon and therefore, their verdict must be for the defendant. Which prayer the Court below refused.

As this prayer raises the question upon which this case must be decided viz: Whether there ever was a contract between the parties, arising out of the correspondence between them we will have to refer to the letters which we have heretofore set out in full.

The letter of March 17th from appellant contains this language *"subject to usual wharfage and inspection charges* which writer mentioned to you." This was something different from those preceding and required acquiescence on the part of the appellee. Their reply to this in their letter of March 19th, is as follows: "We are in receipt of your favor of the 17th inst., wherein you accept our offer as per our letter to you of the 11th inst., and you state in your letter that the lumber will be subject to usual wharfage and inspection charges. Of course we knew this in case of inspection, but we do not think you will require this. Of course any lumber that does not come according to order, then an inspection will be in order," &c. Now can it be contended that Dixon & Co. agreed by this answer to wharfage and inspection charges? And unless they did there was no contract. By their letter of March 19th, they say in substance that they do not consider that an inspection charge will be necessary and in no part of their letter do they mention anything about the charge, if any, for wharfage. These charges might or they might not become very practical questions in their settlements. Then on the 21st the appellant wrote to appellee and told them that an inspection would be necessary, and further states as follows.

"Our shipping point by rail is City Block, Pennsylvania Railroad, if City Block is omitted when consigning car, there will be a charge of $3.00 for transfer to that point which will fall on you." It will be seen that here are two very material

additions by way of charges, one absolutely certain and the other contingent, to which the appellee never replied, and yet the appellee contends ·that there had been consummated a contract between the parties. We think not, for it nowhere appears that the inspection and wharfage charges actual or prospective were ever accepted by the appellant company. In point of fact this series of letters consisted of propositions and counter propositions and nowhere brought the parties to a. distinct and definite conclusion. Various terms were suggested but the minds of the parties ultimately never met. For it nowhere appears that the appellee agreed to stand the inspection and wharfage charges, nor the additional charge of $3.00 for transfer. So that with no distinct agreement as to the inspection, wharfage charges and transfer charge it is impossible to conclude that there was definite agreement evidenced by these letters, or any other evidence in the record.

In the case of *Hand* v. *Evans Marble Company*, 88 Md. 226, this Court held: "That when negotiations between parties looking to the formation of a contract take place by correspondence, many letters being exchanged, and at a certain point an agreement seems to have been reached, still such an agreement will not be held to constitute a final contract when the succeeding letters between them show that they did not intend to abide by such terms as a complete expression of their intention." If there had been a final agreement reached between the parties which directly contemplated, and resulted in, any obligation, and without the concurrence of the two elements of agreement and obligation, no legal contract can exist why did Duker Box Company write on March 17th to Dixon & Co. in this language, "but you did not state in your letter, subject to usual wharfage and inspection charges which writer mentioned to you." To the same effect is the case of *Winn* v. *Bull*, 7 Law Reports, Chancery Division, page 29.

It follows from what we have said that the appellants first prayer should have been granted.. The judgment of the lower Court will therefore be reversed, and as the appellee cannot recover, no new trial will be awarded.

*Judgment reversed without a new trial, with costs to the appellant above and below.*