## NAVARRE REALTY COMPANY

*vs.*

## ISAAC COALE, JR., Assignee.

*Contracts: by mail; acceptance.    Corporations: officers;
powers; personal liability.*

A valid contract may be entered into by letter. But in order
for an acceptance, by letter, of an offer made, to constitute a
binding agreement, the acceptance must be definite, uncondi-
tional, and made within a reasonable time.          pp. 500-501

An officer of a corporation has, in general, no authority to
make a contract binding personally upon the other officers of
the corporation.                                       p. 501

*Decided January 15th, 1914.*

Appeal from the Superior Court of Baltimore City.
(Dawkins, J.)

The facts are stated in the opinion of the Court.

The cause was argued before Boyd, C. J., Briscoe, Burke,
Thomas, Pattison, Urner and Stockbridge, JJ.

*Thomas Burling Hull* and *Charles E. Ecker,* for the appel-
lant.

*George A. Finch,* for the appellee.

Burke, J., delivered the opinion of the Court.

This suit was brought to recover the sum of eight hundred and seventy-five dollars alleged to be due for commissions in obtaining a mortgage loan of thirty-five thousand dollars for the appellant company. The facts necessary to present the important question in the case are few and practically undisputed, although the record contains nearly two hundred pages and on some questions exhibits sharp conflicts and much feeling.

The defendant is a corporation, and was the owner of a fee simple lot of ground in Baltimore City having a frontage of fifty feet on Eutaw Place, with a depth of one hundred and thirty feet to an alley. It had erected upon this lot a four-story brick house and basement known as the Navarre Apartments. This property was encumbered by two mortgages, and the defendant owed other debts which it was anxious to pay. It entered into an arrangement with Mr. Griffin by which he was to take the property—giving in exchange a farm in Baltimore County and two mortgages upon the property for certain amounts. One of these mortgages was to be executed and delivered to the defendant company, and the other—a first mortgage—to the person who should advance the money. By this arrangement the company expected to pay the mortgages then on the property and have them released, and also to realize from the first mortgage loan sufficient in addition to discharge the other outstanding obligations. To carry this plan through it was considered that forty thousand dollars would be required, and the defendant undertook to raise that amount by a first mortgage upon the apartments.

It employed Mr. George Norbury MacKenzie, of the Baltimore Bar, to secure this loan. After doing some work upon the matter Mr. MacKenzie was taken sick, and he engaged Mr. Isaac Coale, Jr., to take charge of the matter for him. This was made known to the defendant and was acceptable to it.

The Penn Mutual Life Insurance Company of Philadelphia was looking for good mortgage loans, and Mr. Coale got into communication with it through Mr. Clarence W. Perkins, its local counsel in Baltimore. He obtained from Mr. Perkins a blank form of application for a loan. This form was filled in and signed on July 20th, 1912, by the defendant company, by Harry E. Gilbert, its Vice-President, and William G. Buckey, its Secretary and Treasurer. The application was "to the Penn Mutual Life Insurance Company of Philadelphia for a loan of $40,000.00, payable at the expiration of five years, at 6% interest per annum, payable semi-annually (principal and interest to be payable at the said company's office in Philadelphia, Penna., in gold coin of the United States of present standard of weight and fineness, or in its equivalent at lender's option)." This application, which contained full information as to the character, value, location, and ownership of the property, was sent by Mr. Coale to the office of the Penn Mutual Company in Philadelphia. Upon the receipt of the application, the company sent Mr. L. W. Streeble, the assistant manager of its loan department, to Baltimore to examine the property. He and Mr. Perkins went through the apartments. Mr. Streeble was of the opinion that the company would not make the loan "without some individual endorsement or security." A paper entitled "Personal Report upon Proposed Bondsmen" was submitted to the defendant, in which each of the persons willing to personally guarantee the loan applied for was to insert his name, address, occupation, and estimated worth over and above his holdings in the Navarre Realty Company Harry E. Gilbert, Vice-President; J. Fred Adams, President; William G. Buckey, Secretary and Treasurer of the defendant, and C. Milton Wells inserted their names therein and gave the other information requested, and the paper was then sent to the Penn Mutual Company. The evidence does not show the date when this paper was filled out, but it does show that it was done after Mr. Streeble's visit to Baltimore.

There was great reluctance on the part of some of the persons who inserted their names in the paper to obligate themselves personally to pay the loan; but, as a loan of forty thousand dollars would enable them to complete the sale, and furnish besides sufficient money to discharge other obligations for which they were personally liable, they finally expressed their willingness to do so. There were, therefore, reasons which induced them to become personally responsible for a loan of forty thousand dollars, and reasons why they might decline to become responsible for a smaller loan from which nothing would be available to discharge the outstanding indebtedness. The object of that paper was twofold— *first,* it was an expression of a readiness of the persons who inserted their names therein *to become* in some proper way personally responsible for the payment of a forty thousand dollar loan; and *secondly,* to furnish information to the Penn Mutual Company of the names and financial responsibility of persons who might be offered as "proposed bondsmen." It imposed no obligation whatever upon the Penn Mutual Company.

After receipt of this paper, the Penn Mutual Company notified Mr. Coale that it would not make the loan applied for according to the terms of the application of July 20th, 1912. An effort was then made to secure a loan on different terms, and, after some further negotiation, Mr. Streeble wrote Mr. Coale as follows:

"The Penn Mutual Life Insurance Company,
                    Philadelphia.

                                        August 10th, 1912.

Mr. Isaac Coale, Jr.,
    10 East Fayette St., Baltimore, Maryland.
Dear Sir:—

    Your favor of yesterday with respect to application of the Navarre Realty Company for a loan of $40,000 is received. I note that the case can be closed on the basis of $40,000, with annual reduction of $1,000, or $35,000 for a period of five years. In reply we beg to state that neither proposition would attract our

committee. If the parties are prepared to arrange for annual reductions of $3,000 or semi-annual payments of $1,500, it is possible our committee might give the matter favorable consideration, or a loan of $35,000, with annual reductions of $1,500. If the application can be amended in these respects, I shall take pleasure in submitting it for action."

On August 12th, Mr. Coale wrote as follows to Mr. Streeble:

"Your letter of 10th is received, and upon the suggestion of Mr. Perkins I write to ask if you will consider a loan of $40,000 with semi-annual reduction of $1,000 instead of $1,500? Will you kindly reply by special delivery or telegram. Hoping you will approve the above, I am."

To this letter Mr. Streeble on August 13th replied as follows:

"Your favor of yesterday, regarding the Navarre application for a loan of $40,000 is received. My first thought with respect to the annual reductions was $4,000 per year, but I do not think our committee would care to go below semi-annual payments of $1,500, or a total of $3,000 per year. If your parties are prepared to meet this, I will take pleasure in submitting the matter for action."

The next written communication between the parties was the following:

"Baltimore, Md., August 17, 1912.
The Penn Mutual Life Insurance Company,
    Philadelphia, Pa.
Mr. John W. Hamer,
    Manager of the Loan Dept.
Dear Sir:—

The Navarre Realty Company desires to amend their former application for a loan to the extent as follows:

The amount of the loan applied for—$35,000.

The terms—5 years.

Annual reduction—$1,500 per year.

Rate of interest—6 per cent.

The rest of the application to remain the same.

> Very truly yours,
>> Navarre Realty Company,
>>> Harry E. Gilbert,
>>>> Vice-President."

In response to this amended application, Mr. Coale received the following letter, a copy of which (containing, however, a clerical error which is admitted not to be material in this case), was left with Mr. Gilbert on August 20th, 1912:

"The Penn Mutual Life Insurance Company,
Philadelphia.

August 19th, 1912.

Mr. Isaac Coale, Jr.,

10 E. Fayette Street, Baltimore, Md.

Dear Sir:—

Your letter of the 17th inst., is received. In reply we beg to state that, *if all things are found satisfactory,* we are prepared to make a loan of $35,000 to the Navarre Realty Company on its property at the corner of Eutaw place and Wilson street, Baltimore, 6 per cent., $1,500 to mature at the end of one, two three and four years, the balance at the expiration of five years, *settlement to be made entirely at our convenience. We are also to be furnished the joint and several guarantee of principal and interest by the individuals whose names have been submitted to us.* If preferred, it will be entirely satisfactory to us to have $750 payable each six months beginning six months hence, leaving a balance of $28,250 to mature at the end of five years. *It is also a condition of approval that the case is to be closed within sixty days, after which interest will be charged, or at our option, the loan may be taken off our pending list.* Title and

papers are, of course, to meet our requirements in
every respect and the customary instructions are being
forwarded by this mail to Hon. Clarence W. Perkins,
10 South street, Baltimore, into whose hands kindly
place title papers and arrange for payment of all ex-
penses, including his charge.

Yours truly,

H. W. Hamer,
Mgr. Loan Dept."

The italics in the above transcript have been used by us.

The firm of Caughy, Hearn and Carter had notified the
defendant on the morning of August 20th, 1912, prior to
the visit of Mr. Coale to Mr. Gilbert, and before the delivery
of the copy of the above quoted letter, that it had placed the
loan with the Equitable Mortgage and Trust Company, that
firm had been authorized to secure the loan, and the terms
upon which the trust company offered to make the loan were
accepted by the defendant, and all further negotiations with
the Penn Mutual Company was terminated.     Mr. Mac-
Kenzie took up with Dr. Adams, the President of the de-
fendant company, the question of commission.   The company
declined to pay, and the claim of MacKenzie was assigned
to Isaac Coale, Jr., who instituted suit thereon against the
defendant and recovered a judgment, from which the defend-
ant has appealed.

It is conceded that there can be no recovery in this case,
unless the Penn Mutual Company was under an obligation
to make the loan upon the terms specified in the amended
application of August 17th, 1912.   There is no formal writ-
ten contract between the Navarre Realty Company and the
Penn Mutual Company, and if any contract existed it must
be found in the written correspondence quoted.   This Court
in *Wills* v. *Carpenter,* 75 Md. 80, said: "It is perfectly well
settled and familiar law, that a valid contract may be entered
into by letters.   When a proposal is sent by mail or other-
wise, received, and accepted, and the acceptancies, in a rea-
sonable time, mailed or sent by the same agency or means

employed in the transmission of the proposal, the proposal and acceptance, *if definite and unconditional,* constitute a binding agreement between the parties."

There are two fatal defects in the plaintiff's case; first, the letter of August 19th, 1912, does not constitute "a definite and unconditional" acceptance of the proposal contained in the amended application. The portions of the letter we have italicised show that not only was, the acceptance conditional—that something was left open for future settlement,—but that there were other important conditions contained in the letter which had not hitherto been mentioned or suggested. How can it be said that the Navarre Realty Company could have maintained a suit against the Penn Mutual Company had it refused to make this loan? Had such a suit been brought, the one fact that it had not furnished the joint and several guarantee or principal and interest by the individuals whose names have been submitted as "Proposed Bondsmen," would have presented an insuperable bar to recovery; secondly, Harry E. Gilbert, the vice-president of the defendant, had no authority to make a contract by which the individual officers of the company should become personally liable for the loan applied for in the amended application of August 17th, 1912. The plaintiff bases his right to recover upon the Act of 1910, Ch. 178, p. 5 (Code 1912, Art. 2, sec. 17) ; but the evidence does not bring the case within the provisions of that Act or within the principles of the common law applicable to suits of this kind. Without discussing the other questions raised we are of opinion that the undisputed facts show that the plaintiff was not entitled to recover, and that the defendant's first and second prayers which submitted that proposition to the Court should have been granted. The Court refused both of these prayers, and for this error the judgment will be reversed, and as no recovery can be had a new trial will not be awarded.

> *Judgment reversed, without a new trial, with costs to the appellant.*