(Decided 16th November, 1893.)

---

EUREKA FERTILIZER COMPANY OF CECIL COUNTY, a Corporation *vs.* THE BALTIMORE COPPER, SMELTING AND ROLLING COMPANY, a Corporation.

*Sale of Barge—Construction of Contract of Purchase— Province of Jury—Conflicting evidence—Instructions— Warranty—Breach—Recoupment—Evidence—Right to Insurance money.*

Negotiations for the sale of a barge were conducted partly in writing and partly by parol. Pending the negotiations it was

Eureka Fertilizer Co. *vs.* Balto. Copper, Smelt. & Roll. Co.

asserted by the vendor that the barge, which was an old one, "was in a condition for service at once." The vendee, however sent its superintendent to make an inspection of the boat, which he did, as far as was possible without hauling her out upon the ways. After this inspection had been made, he went to the vendor's office, and informed the vendor's treasurer that he had inspected the barge, and that, as far as he could see, she was all right, to which the treasurer, as testified to by the superintendent, replied, "Yes, we have recently had her overhauled, and she is all right." This statement was denied by the treasurer. On her fourth trip after the consummation of the sale, the barge sprung a leak and sank, seriously damaging her cargo, and upon subsequent examination it was found that her bottom was in such a rotten condition that she would have to be substantially rebuilt. In an action by the vendor against the vendee upon certain promissory notes given in payment of the purchase money, it was HELD:

1st. That as the contract was partly in writing and partly in parol, its construction was not for the Court but for the jury; and it was consequently for the jury to say under proper instructions, whether taking all the evidence, both written and oral, together, and crediting such of it as they might believe, there was a warranty by the vendor of the soundness of the boat, or whether, adopting as true others of the circumstances adduced, the purchase was made with any other or different warranty, or none at all, but purely upon the inspection of the defendant's superintendent.

2nd. That the case presented opposite and conflicting theories founded upon the opposite and conflicting evidence introduced by the contesting parties; and each of these parties, if the evidence supported his theory, was entitled, upon making such request, to have the legal principles involved in that theory announced to the jury upon a hypothetical statement of the facts upon which it was founded.

3rd. That no question relative to an implied warranty was involved, but if in addition to the admitted representation of the plaintiff that the barge was in condition for service at once, the jury should find the broader warranty contained in the statement claimed to have been made by the plaintiff's treasurer, that the barge had been recently overhauled and was all right, and that there had been a breach of it, the defendant was entitled to recoup against the amount it owed for the boat, the amount of damages it had sustained as a direct consequence of that breach.

Eureka Fertilizer Co. *vs.* Balto. Copper, Smelt. & Roll. Co.

4th. That there was some evidence of such a warranty, and, being sufficient to go to the jury, it was exclusively for them to say whether that evidence was true.

5th. That the inspection of the barge by the defendant before the purchase, did not exclude the hypothesis of an express warranty.

When the barge was purchased by the vendee it remained registered in the name of the vendor, and, as an additional security for the payment of the notes representing the purchase money, policies of marine insurance were taken out in the vendor's name upon the boat and her cargo, the vendee paying the premiums thereon. After the sinking of the boat, the policies were delivered to the vendee and under a compromise with the insurance companies the latter paid to the vendee $1000, upon the surrender of the policies. HELD:

That the defendant, would be entitled to recoup against the notes in suit the actual damages it had sustained by a breach of the warranty it set up, if such warranty had been found by the jury; but its actual damages were only such amount as remained, if any, after giving credit for the amount of money received by it from the insurance companies. It could not retain the proceeds of the insurance and recoup against the purchase price of the barge the very same damages for which it had received compensation under the policies.

APPEAL from the Circuit Court for Harford County.

The case is stated in the opinion of the Court.

*Exception.*—At the trial the plaintiff offered four prayers. The fourth prayer having been rejected, is omitted. The other prayers are as follows:

1. If the jury find from the evidence that the plaintiff sold and delivered to the defendant the acid barge called the "General Ned Williams" as she stood, and subject to the inspection of the defendant, and shall further find that in making said sale the plaintiff only represented that said barge was in condition for service at once, and shall further find that said defendant inspected said barge and accepted the same, and that the defendant

executed and delivered the notes offered in evidence in payment for said barge, and shall further find that said barge was in condition for service at the time of the sale and delivery to the defendant, then the plaintiff is entitled to recover from the defendant the full amount of said notes, with interest thereon, according to their tenor.

2. That if the jury find from the evidence that the barge "General Ned Williams" was sold by the plaintiff to the defendant subject to the inspection of the defendant, and shall further find that said barge was inspected by one Christie, selected by the defendant to make said inspection, and that every facility was given him by the plaintiff to make such inspection, and if they further find that said barge contained no defects or weaknesses which might not have been discovered by the application of a proper test or examination by said Christie, and that the defendant relying upon the judgment of said Christie as to the condition of said boat accepted the same, then their verdict must be for the plaintiff for the full amount of the notes, with legal interest thereon.

3. If the jury find from the evidence that the plaintiff sold to the defendant the said barge called the "General Ned Williams" as she stood, and subject to the inspection of the defendant, and that in making the sale the plaintiff represented that the said barge was in condition for service at once, and shall further find that the defendant inspected said barge and accepted the same, and that the defendant executed and delivered the notes offered in evidence in payment for said barge, and thereupon proceeded to use said barge in their business for transporting acid for a period of not less than five weeks, then the plaintiff is entitled to recover the amount of said notes, with interest thereon, according to their tenor; provided that the jury shall also find that said

OCTOBER TERM, 1893.            183

Eureka Fertilizer Co. *vs.* Balto. Copper, Smelt. & Roll. Co.

barge was in condition for service at the time of the sale and delivery to the defendant.

The defendant offered the four following prayers:

1. If the jury believe that the plaintiff sold to the defendant the barge mentioned in the evidence, for which the notes sued on were given, and as an inducement to the defendant to make said purchase, represented that said barge was all right, and was in condition for service at once, and that the defendant, relying on said representations, agreed to purchase and did actually purchase and accept the same, and gave the said notes for the purchase money, and shall further believe that the said barge was not all right and in condition for service at once, but, on the contrary, was unsound and unseaworthy, and in consequence of such unsoundness, was, together with a valuable cargo, lost or damaged, then the defendant is entitled to recoup against plaintiff's claim on said notes the amount of damage, if any, sustained as a direct consequence of said breach of said warranty.

2. It is not necessary that a representation, in order to constitute a warranty, should be simultaneous with the conclusion of the bargain, but only that it should be made during the course of the dealing which leads to the bargain, and should then enter into the bargain as a part of it.

3. To constitute a warranty, it is not necessary that the word "warranty" or any particular word or form of words should be used, but any representation of the quality or condition of the article sold, made by the seller to the purchaser for the purpose of assuring an intending purchaser of such condition or quality, as a fact, and thereby to induce him to make the purchase, will be an express warranty, if accepted and relied on by the purchaser.

4. If the jury find that the premiums on the policies of insurance mentioned in defendant's first and second

equitable pleas, were paid by the defendant, and the policies taken out in the manner and for the purpose therein stated, then the plaintiff can have no claim on the proceeds of said policies except as collateral security, and only so far as the same may be necessary to secure the payment of the notes given by the defendant to the plaintiff, and the fact that the proceeds of said policies have been received by the defendant cannot be taken into consideration by the jury in estimating any loss or damage which the defendant may have sustained by reason of a breach of any warranty which may have been given by the plaintiff to the defendant on the sale of the barge mentioned in the evidence; and if the jury find the facts stated in defendant's first prayer, and that the defendant sustained damage as therein stated, then, in finding their verdict, the jury must subtract the amount of such damage from the amount of principal and interest of said notes without regard to what the defendant had received as the proceeds of said policies, the verdict being limited to the difference between the amount of said notes with interest, and the amount of said damage, and if the said damage equals or exceeds in amount the principal and interest on said notes, the verdict must be for the defendant under the pleadings in this case.

The Court (WATTERS, J.,) granted the first, second and third prayers of the plaintiff, and rejected its fourth prayer; and granted the second and third prayers of the defendant, and rejected its first and fourth prayers. The defendant excepted, and the verdict and judgment being against it, appealed.

The cause was argued before ROBINSON, C. J., FOWLER, McSHERRY, and BRISCOE, J.

*Albert Constable,* (with whom was *James J. Archer,* on the brief,) for the appellant.

*Robert F. Brent,* and *John S. Wirt,* for the appellee.

If in making the purchase the defendant relied on the judgment and inspection of its manager Christie, whom it had selected to make the examination of the barge, and the defects complained of, were such as could have been discovered by proper test or examination by said Christie, and he neglected to make such an examination, then such neglect amounted to contributive negligence, and the defendant ought not to recover. *Potomac Steamboat Co. vs. Harlan & Hollingsworth Co.,* 66 *Md.,* 48.

The Court properly refused the defendant's first prayer. While alleging an express warranty, "that she was all right, and in condition for service at once," this prayer undertakes to introduce a larger and different warranty, viz., of *soundness* and *seaworthiness,* and so violates the maxim, *" expressum facit cessare tacitum." Broom's Legal Maxims,* 657. And again, as said in *Blood vs. Howard Fire Ins. Co.,* 12 *Cushing,* 473, "a wararnty will in no case be extended by construction."

There was no evidence of any such warranty, of *soundness* or *seaworthiness* on the part of the plaintiff, given at the trial or contained in the record. If there is no evidence of such a warranty, it cannot be assumed by implication, unless the seller is the manufacturer or grower.

" Where there is a sale of a definite existing chattel specifically described, the actual condition of which is capable of being ascertained by either party, there is no implied warranty." *Rice vs. Forsyth,* 41 *Md.,* 403; *Horner vs. Parkhurst,* 71 *Md.,* 116; *Wheat, et al. vs. Cross,* 31 *Md.,* 104; *Warren Glass Works Co. vs. Keystone Coal Co.,* 65 *Md.,* 552; *Adler vs. Portner Brewing Co.,* 65 *Md.,* 27.

The defendant's fourth prayer, which was refused by the Court was objectionable. The proposition contained in this prayer has no foundation in either law or justice

Eureka Fertilizer Co. *vs.* Balto. Copper, Smelt. & Roll. Co.

That the defendant, while paying not one dollar for the barge, should be allowed to put $1,000 quietly in its pocket, realized from the insurance policies given to secure the notes, whose payment they are here disputing, and yet the jury in estimating the supposed damages sustained by the defendant, should not be allowed to consider, that if any damage was sustained, the defendant had been compensated *pro tanto* therefor, by the receipt of this sum of $1,000.

Should the jury have believed, which it did not, that the defendant had received damages to the full amount of the contract price, and had given a verdict accordingly, then the result under this instruction would have been that the plaintiff would have been left with neither boat nor the money for which it was sold, and the defendant whose actual damages amounted in the supposed case, to only the contract price of $1,700, would have a clear gain of $1,000, for which it had given no consideration whatsoever.

The true rule is the *actual* damages sustained by the defendant, which is to be ascertained by deducting from the contract price, the amount of damages less whatever the defendant may have realized from the chattel.

McSHERRY, J., delivered the opinion of the Court.

This suit was instituted to recover the amount of several promissory notes given for the purchase price of a barge sold by the appellee to the appellant.    To the declaration which contained, in addition to counts on the notes, the usual money counts, the defendant pleaded the general issue, and several defences by way of equitable pleas which need not be particularly alluded to at this time.    But one exception appears in the record and that was taken to the action of the Court below upon the several prayers presented by both plaintiff and defendant for instructions to the jury.    Whether the in-

OCTOBER TERM, 1893.                    187

Eureka Fertilizer Co. *vs.* Balto. Copper, Smelt. & Roll. Co.

structions granted at the instance of the plaintiff were correct and whether those of the defendant which were asked but refused, ought to have been granted, are the only questions before us for decision.

The negotiations which ultimately culminated in the execution on May the fifteenth, 1889, of the notes sued on, were carried on partly in writing and partly by parol, and seem to have originated on February the thirteenth of the same year in a letter addressed by the appellant to the appellee, making inquiry as to whether the latter had disposed of its acid boat, and requesting the appellee to name the lowest price for which the boat could be bought. Considerable correspondence followed, throughout which the appellee asserted that the barge, which was an old one, "was in condition for service at once." The appellant, however, sent its superintendent to make an inspection of the boat, and this he did as far as was possible without hauling her out upon the ways. After this inspection had been made he went to the appellee's office in Baltimore, and informed the appellee's treasurer that he, the witness, had inspected the barge and that as far as he could see, she was all right; to which the treasurer replied, "yes, we have recently had her overhauled *and she is all right.*" This statement was denied by the treasurer. Subsequently, the purchase was consummated, the notes sued on were signed and delivered, and the barge was turned over to the appellant, though she remained registered in the name of the vendor as security for the payment of the purchase money. After she was purchased the boat was used by the appellant to transport acid from Camden, New Jersey, to the appellant's works on the Susquehanna River, by way of the Chesapeake and Delaware Canal. On her fourth trip from Camden, she sprung a leak and sank in the canal, seriously damaging her valuable cargo. She was afterwards raised and towed to Havre de Grace, and placed

upon a marine railway in a ship yard for repairs.  It was then ascertained that her spikes were corroded and worn, that some of her timbers were rotten, and others so decayed as to be incapable of holding a nail, and that the planking on her bilges below the water line was worn from its original thickness of two and a half inches down to one-half of an inch; and that to make her seaworthy it would be necessary to lay a new keel, that is, to re-build her.   This condition of the boat was not apparent when she was inspected by the appellant's superintendent, because the alleged defects were all below the water line and could only have been discovered after she had been placed upon a dry-dock.   There was evidence tending to show that the four trips made by the boat after she had been purchased by the appellant could not possibly have caused the unsound condition just described, and that, therefore, she must have been in this damaged state when sold by the appellee.

As the contract of sale was partly in writing and partly in parol, its construction was not for the Court, but for the jury.   *Roberts & Co. vs. Bonaparte,* 73 *Md.,* 190.   It was consequently for the jury to say, under proper instructions, whether, taking all the evidence, both written and oral together, and crediting such of it as they might believe, there was a warranty by the vendor of the soundness of the boat; or whether, adopting as true others of the circumstances adduced, the purchase was made with any other or different warranty, or none at all, but purely upon the faith of the inspection of which mention has been made.   The case presented, therefore, opposite and conflicting theories founded upon the opposite and conflicting evidence introduced by the contesting parties; and each of these parties, if the evidence supported his theory, was entitled, upon making such a request, to have the legal principles involved in that theory announced to the jury upon an hypotheti-

OCTOBER TERM, 1893.                189

Eureka Fertilizer Co. *vs.* Balto. Copper, Smelt. & Roll. Co.

cal statement of the facts upon which it was founded. Accordingly, the plaintiff below by its first and third prayers procured an instruction to the jury to the effect that if they should find that the plaintiff sold the barge as she stood subject to an inspection by the defendant, and that the plaintiff only represented that the barge was in condition for service at once; that the defendant did inspect her and accept her, and that she was in condition for service at the time of the sale, then the plaintiff was entitled to recover the full amount of the notes with interest. Upon the other hand, the defendant asked, but was refused, an instruction to the effect that if the jury should find that as an inducement to the purchase the plaintiff represented that the barge *was all right,* and was in condition for service at once, and that the defendant relying upon that representation did make the purchase, and if they should find that the barge was not all right, and in condition for service at once, but on the contrary, was unsound and unseaworthy, and in consequence of such unsoundness was with her cargo lost or damaged, then the defendant was entitled to recoup against the claim on the notes the amount of damages sustained as a direct consequence of the breach of warranty.

No question relative to an implied warranty was or is involved, or could arise. But the existence and scope of an express warranty was a subject distinctly presented. The plaintiff practically conceded by its first and third instructions that the barge had been represented as being in condition for service at once, but the defendant claimed a broader warranty than this, and relied to support it upon the testimony of its superintendent as hereinbefore quoted. It insisted that if the jury should find that such a warranty had in fact been given, and that there had been a breach of it, the defendant was entitled to recoup against the amount it owed for the boat, the amount of damages

it had sustained as a direct consequence of that breach. There ought to be no dispute about the correctness of this legal proposition, nor do we understand that there is. But the prayer has been objected to, chiefly, if not solely upon the ground that no evidence was adduced to support it. There was undoubtedly some evidence of such a warranty, and being sufficient to go to the jury, it was exclusively for them to say whether that evidence was true. If true, it established a broader warranty than the plaintiff conceded, and it asserted not only that the barge was in condition for service at once, as she well might have been though old and much worn, but further that she *was all right,* that is, was sound and consequently was not in such a state of decay and disrepair as to require the laying of a new keel to make her seaworthy. The rejection of the appellant's first prayer confined the jury to the warranty or representation referred to in the appellee's instructions, and excluded the recoupment relied on as a defence under the broader warranty set up by the defendant. The result was that the defendant's theory was eliminated from the case, though both that theory and the plaintiff's were entitled to be passed on by the jury. This was not only an error, but was injurious to the appellant.

The appellee's second instruction proceeded upon the hypothesis that there was no warranty of any kind, but that the barge was purchased solely upon the faith of the inspection made by the vendee's superintendent. It presented an alternative proposition to that contained in the first and third, and in that view is free from objection. We do not understand it as meaning that there could be no express warranty where there had been an inspection of the chattel before the purchase. Such is not the law. 2 *Benj. on Sales, Sec.* 985, (*4th Am. Ed.*)

Eureka Fertilizer Co. *vs.* Balto. Copper, Smelt. & Roll. Co.

The fifth prayer seems not to have been acted on by the Court below and is therefore not before us for consideration.

There was no error committed by the Court's refusal to grant the defendant's fourth prayer. When the barge was purchased by the appellant it remained, as we have said, registered in the name of the vendor, and as an additional security for the payment of the notes representing the purchase money, policies of marine insurance for the sum of twenty-two hundred dollars were taken out in the vendor's name upon the boat and her cargo, the vendee paying premiums thereon. After the sinking of the boat and the consequent damage to her cargo, the insurance companies refused to pay the loss thus occasioned, and considerable negotiation ensued. Finally, the vendor delivered the policies to the vendee and agreed, upon condition of being indemnified, that its name might be used in any proceedings deemed necessary by the appellant to recover upon the policies; but a compromise was subsequenty effected between the appellant and the insurance companies, whereby the latter paid to the former, the defendant below, the sum of one thousand dollars upon a surrender of the policies. These are, in outline, the facts set forth in the equitable pleas.

Now, the defendant's fourth prayer asked the Court to instruct the jury that the fact that the proceeds of these policies had been received by the defendant could "not be taken into consideration by the jury in estimating any loss or damage which the defendant may have sustained" by a breach of the plaintiff's warranty, but that the jury must subtract the amount of such loss or damage from the amount of the principal and interest of the notes, "without regard to what the defendant had received as the proceeds of said policies." In other words, the debtor having received the proceeds of policies of insurance taken out in the name and for the

Eureka Fertilizer Co. *vs.* Balto. Copper, Smelt. & Roll. Co.

benefit of the creditor could retain those proceeds, and also defeat a recovery upon the promissory notes by recoupment, if the damage or loss under the warranty equalled the amount due on the notes. It, the defendant, would thus not only pay nothing for the property which had been purchased, but would actually realize a profit from the insurance to the extent that that insurance covered the barge. The appellant would have been entitled under its first prayer, had it been granted, to recoup against the notes the *actual* damages it had sustained by a breach of the warranty it set up, if such warranty had been found by the jury; but its *actual* damages were only such as remained, if any, after giving credit for the amount of money received by it from the insurance companies. It could not retain the proceeds of the insurance, and recoup against the purchase price of the barge the very same damages for which it had received compensation under the policies.

The defendant's second and third prayers were granted.

For the error committed in refusing to grant the appellant's first prayer, the judgment must be reversed, and a new trial will be awarded.

*Judgment reversed, with*
*costs above and below, and*
*new trial awarded.*

(Decided 16th November, 1893.)