NILS P. SEVERIN ET AL. *v.* ROBERT S. GREEN, INC.
[No. 98, October Term, 1933.]

*Decided February 1st, 1934.*

The cause was argued before Bond, C. J., Pattison, Urner, Adkins, Offutt, Digges, and Parke, JJ.

*Jacob E. Yaffe,* for the appellants.

*Albert A. Sapero* and *R. Contee Rose,* for the appellee.

Pattison, J., delivered the opinion of the Court.

The appeal in this case is from a judgment recovered by the appellee, Robert S. Green, Incorporated, against the appellants, Nils P. Severin and Alfred N. Severin, copartners, trading as N. P. Severin Company.

The declaration alleged that the plaintiff, "between the dates of January 7, 1930, and August 4th, 1930, proposed to furnish the defendants thirty-seven thousand (37,000) barrels of Whitehall Portland cement, U. S. Bin Tested, in cloth bags, F. O. B. cars, Baltimore, Maryland, during the construction of the United States Post Office Building at Baltimore, for the sum of Two Dollars and fifty-one cents ($2.51) per barrel; terms of payment: ten cents (10¢) per barrel discount allowed for payment within fifteen days, net, 30 days; in the event that the general market price declined below the price, namely, $2.51 per barrel, then the plaintiff agreed to meet the new price upon the same terms; which proposal the defendants accepted, and sixteen thousand four hundred and ninety-four barrels of said cement were delivered by

the plaintiff and accepted and paid for by the defendants at the prices called for in said contract. That thereafter the plaintiff was notified by the defendants that they would not accept any further deliveries of said cement at any time. That the defendants thereafter neglected and refused and have ever since neglected and refused to order or receive the balance of said cement, although the Post Office Building is long since completed and although during the time of its construction the plaintiff was ready, able, and willing to deliver the remaining barrels of said cement as required by the terms of the contract." To the declaration, the defendants pleaded they "did not promise as alleged," and "were never indebted as alleged."

The fundamental question lying at the root of the whole controversy seems to be, Was there a contract between the parties?

It is contended by the plaintiff that there was a contract, evidenced partly by writings and partly by parol. If so, then it was for the jury to determine whether there was a contract, and, if they found a contract, what that contract actually was. If, on the other hand, writings alone evidenced the contract, as contended by the appellants, it was for the court to construe the writings, and determine whether there was a contract, and, if so, what that contract was. *Roberts v. Bonaparte,* 73 Md. 191, 20 A. 918; *Joseph Bros. Co. v. Schonthal Co.,* 99 Md. 382, 58 A. 205; *Eureka Fertilizer Co. v. Balt. Copper Co.,* 78 Md. 188, 27 A. 1035; *Buffalo Steel Co. v. Kirwan,* 138 Md. 65, 113 A. 628. Inasmuch as the appellants' theory was founded on the assumption that the writings alone evidenced the contract, it will be necessary to set out these writings, consisting only of the correspondence between the parties.

It is shown by this correspondence that the appellee, Robert S. Green, Incorporated, was requested by the appellants to give quotations on certain materials, including "Gray Portland Cement," which were to be used by the appellants. This request was answered by appellee's letter of May 1st, 1930. In appellants' reply to appellee's letter, they asked that there

should be inserted in the proposed agreement the following provision, which is called by the parties the "decline clause": "In the event that during the life of this agreement, prices of materials embraced herein decrease, it is understood that the prices mentioned in this agreement shall be decreased accordingly." In answer thereto, the appellee wrote, saying: "Regarding the paragraph in your letter in which you mention that a possible decline in the price might occur, we wish to advise that we understand this as follows: If the general market price of cement declines below the price of the contract, namely, $2.51 per barrel, then we will agree to meet the new price, same terms," etc. In reply to the appellee's letter, the appellants wrote on June 27th, saying: "The clause mentioned in our contract governing decline in price, shall affect the contract price by whatever the decline may be. In other words, if the standard price of cement in the territory of Baltimore drops 10¢, your price would decline accordingly from $2.51 to $2.41. Your interpretation of the decline, that it would only affect your contract if the price dropped to a point below $2.51, is incorrect." Replying to this letter, the appellee wrote on July 2nd: "We cannot allow you anything unless the market goes below the price which we have sold you." On July 10th appellants wrote appellee, saying: "Considering that the decline clause in the contract is very explicit, and under the conditions explained to you above, we cannot agree to any change," and suggested that, because of the urgency of the matter, it should be "settled one way or the other without delay," and asked that the letter be answered by wire immediately, saying whether or not the appellee would accept the contract as it then read. This letter was answered by the appellee on July 22d, stating that their Mr. Green, who handled this phase of their business, was out of town, and would communicate with the appellants upon his return home. On July 25th appellee wrote acknowledging order for 150 barrels of cement, and said: "This to be in accordance with the terms of your letters of June 19th, and July 2nd." The appellants, by their letter of August 1st, again took issue with the appellee as to its interpretation of

the "decline clause," and concluded their letter by saying: "It must be settled one way or the other immediately, and we therefore suggest that you respond to this letter by return mail." On August 4th appellee wrote appellants, saying: "You gave us the order for the cement for the above job on our quotations of May 1st. Nothing was said about the reduction in price in the event the market declined and we can do nothing regarding this matter only as outlined in our letters of June 19th and July 2nd." This is not a correct statement by the appellee, as the appellants' reply of June 16th to appellee's letter of May 1st specifically inserted the condition known as the "decline clause," heretofore stated in full.

It is conceded by the appellee that "up and until the plaintiff's letter of August 4th, and the beginning of the deliveries of cement, on that day (which, as a matter of fact, was not the beginning of the deliveries) there was a disagreement as to the 'decline clause,' and there was no meeting of the minds." Therefore, if there was a meeting of the minds, it must be shown from that letter and what followed.

On December 30th the appellants wrote appellee. This was the first letter passing between the parties after the reduction in the market price of cement. In this letter they again quote the "decline clause" as it appeared in their letter of June 16th, and informed the appellee that they were debiting its account in the amount of $105, in accordance with contract agreement. The appellee, on January 5th, 1931, returned the debit memorandum, stating that they shipped the cement subject to their letters of June 19th and July 2nd, and again stated their position as to the "decline clause," and on January 10th appellants wrote appellee that, as price reduction had gone into effect, they were canceling their invoice dated December 30th. On the same day the appellee wrote the appellants, again stating its interpretation of the "decline clause." On January 14th appellants wrote appellee: "If you will refer to correspondence, you will find that it was your desire and wish that it be handled that way, but it was never agreed to by us."

The correspondence closed with a letter from appellee to the appellants written on January 19th, 1931, acknowledging receipt of appellants' letter of the 14th, in which it is said: "You have indicated that you are arranging to purchase the balance of the cement needed on the Baltimore Post Office elsewhere. In the event this is done, we wish to advise you that we will take the necessary steps to protect our interests in this matter."

On and after August 4th, 1930, the time at which it is conceded no contract existed, there was certainly nothing said in the correspondence showing the existence of a contract. On the contrary, the disagreement of the parties upon the "decline clause" lasted throughout the entire correspondence, and it was because of such disagreement that the appellants ceased to purchase any more cement from the appellee.

The inability of the parties to agree upon the "decline clause" became an important factor in their dealings at that time, inasmuch as the market price of cement had largely decreased.

In several of their letters, the appellants used the expressions "the contract" and "our contract." These expressions, as used, cannot properly be construed as admissions of the existence of the contract set up by the plaintiff, or, in fact, of any binding contract. They were, at times, used in immediate connection with a denial of the correctness of the appellee's interpretation of the "decline clause" of the proposed contract. In these cases the appellants were referring to the "decline clause" inserted in appellants' letter of June 16th, 1930, or their interpretation of that clause, and nothing more.

In *Hand v. Evans Marble Co.*, 88 Md. 226, 40 A. 899, this court said, quoting for convenience from the headnotes: "When negotiations between parties looking to the formation of a contract take place by correspondence, many letters being exchanged, and at a certain point an agreement seems to have been reached, still such agreement will not be held to constitute a final contract when the succeeding letters be-

tween them show that they did not intend to abide by such terms as a complete expression of their intention."

The fact, as disclosed by the record, that a number of barrels of cement were delivered by the plaintiff to the defendants and accepted and paid for by them, during the period of negotiations, is the parol evidence to which the appellee refers in its contention that the contract set up by it was evidenced partly by writings and partly by parol. The deliveries and acceptances made during the period of negotiations, at a time when it is definitely shown that the minds of the parties had not met upon the provisions of the proposed contract, cannot be given the significance ordinarily given to such facts, occurring under different circumstances, in determining the existence of a contract. These facts in no way reflected upon the question on which they were unable to agree, and upon which the completion and consummation of the contract depended. It was upon the "decline clause" that they could not agree, and upon this clause they never agreed, though it was continuously before them in their correspondence, and during the period in which the cement was delivered by the plaintiff to the defendants. We are unable to see how, or in what manner, the contract was evidenced by such parol evidence.

The alleged contract, in our opinion, was evidenced only by the written correspondence between the parties. This being so, the question whether a contract existed between them was to be determined, not by the jury, but by the court, upon a proper construction of the writings, consisting of the correspondence between the appellants and the appellee. In our opinion, the writings in this case, consisting only of the correspondence betwen the parties, do not constitute a contract, and the trial court, by whom the question was to be decided, should have so held, and the case taken from the jury, as was prayed by the defendants in their first prayer.

*Judgment reversed without a new trial; appellee to pay the costs.*