## THOMAS H. MAGNESS *v.* EQUITABLE TRUST COMPANY.

[No. 14, April Term, 1939.]

*Decided May 17th, 1939.*

The cause was argued before BOND, C. J., OFFUTT, PARKE, SLOAN, MITCHELL, and DELAPLAINE, JJ.

*Eldridge Hood Young,* with whom were *George B. Petite* and *Young & Crothers* on the brief, for the appellant.

*William Lentz* and *Thomas G. Young, Jr.,* with whom were *France, Rouzer & Lentz* on the brief, for the appellee.

BOND, C. J., delivered the opinion of the Court.

The appellant, a depositor in the banking department of the trust company, made a practice of issuing checks on the company when he had no sufficient funds on deposit to pay them and then making subsequent deposits to cover them; and as some of the covering deposits were not made in time for crediting on the books of the company, according to its customary methods, before the checks drawn were presented, they were returned for lack of funds. The depositor sued for damages in an action of tort, but a verdict for the defendant was directed, and from the resulting judgment the depositor appeals. The direction of the verdict is the only ruling brought up for review.

The plaintiff depositor is a physician, and appears to have begun this anticipating of credit at the bank prior to 1937. For a time the bank, before dishonoring the checks as they were presented, had been searching among the deposits made on the same day, and making a service charge of twenty-five cents for the extra work; and if no covering deposits were found a charge of one dollar was made. But on February 6th, 1937, the bank wrote the plaintiff that thereafter his checks would be paid only if he had funds available at the close of the preceding business day. He then assured the officials he would have covering deposits made in every instance before one o'clock, the time of the last report to the clearing house, and at his request the abandonment of the investigation of deposits was postponed. But on April 9th, 1937, another letter informed him that as his manner of conducting his account had not improved, the change, of which he had been notified on February 6th, would be in effect on and after April 12th. At a meeting with officials of the company, he undertook to do better and correct his method by May 1st, and the special

service was furnished for a further time, until his account was closed. He complained in his suit of the return of six checks after April 12th because of lack of funds, when he had funds on deposit, and in thirteen more instances before May 7th he was charged for searches of deposits for his benefit. At the trial he was prepared to show covering deposits for only two dishonored checks. For a third, drawn to the order of Loyola Building Association, for $35, there were, according to the evidence, no sufficient funds in the bank at any time during the day of presentation; and there was no testimony at all with respect to the remaining checks. The suit is therefore concerned with only two returned checks. The allegations are that, although having sufficient money of the plaintiff's to pay the checks, the trust company negligently and carelessly did not pay them, to his loss and damage in suffering humiliation and embarrassment, as well as loss of credit.

Both of the checks in dispute were drawn at night to the order of a neighboring druggist with whom the plaintiff had dealt since 1923, and by both, after paying any small bills for $5, $10, $15, or $25, he obtained from the druggist cash for his own use. The first check he drew at about ten o'clock on the night of April 15th, for $175, and at that time he had on deposit $263.31, with another check for $185 drawn against it, and some open charges at the bank to be deducted. Two hours after giving the check, he deposited $170 in cash in a night deposit box, in the wall of the bank, in a bag marked with a number allotted him. The check was presented next day, returned, given the druggist again, and cleared and paid on April 20th. The second check, dated May 1st, 1937, for the same amount, $175, was drawn and delivered on April 30th, between ten and eleven o'clock, at night, when the amount to the plaintiff's credit was $113.86. And before one o'clock in the morning he deposited $25 in the night deposit box, and at about noon deposited $150, both deposits being in cash. This check, too, was dishonored, put through the banks again, and paid later.

There is no testimony of any damage to the plaintiff by the refusals to pay. He testified that his relations with the druggist were not affected.

The testimony is meagre. From what there is it may be inferred that, in the regular course of business of the company, deposits made at any time on a given day might not be posted on its books before the end of that day, and thus the plaintiff's anticipatory checks would frequently be presented before the posting of his covering deposits even when these had been made earlier; and the exceptional examination of deposits, for which a charge was made, thus became necessary. There is no evidence of the time of day when the checks were presented. The night deposits were certainly in the company's premises before the presentation, but whether the second check was presented before the covering deposit on the same day does not appear.

The contract which determined the rights and duties of the parties would be such as they made it; the contract ordinarily implied in banking relations would yield to any modification they might make. *Chesapeake Bank v. Swain*, 29 Md. 483, 498; *Canal Bank & Trust Co. v. Denny*, 172 La. 840, 135 So. 376; *Thompson v. Riggs*, 5 Wall. 663, 678, 18 L. Ed. 704; *Cohen v. First Nat. Bank*, 22 Ariz. 394, 401, 198 P. 122. And whatever the time at which such deposits might have become subject to withdrawals under the contract ordinarily implied, the depositor in this instance knowingly dealt with a bank in which the state of an account during a day was regularly taken as that appearing on the books at the close of the preceding day; and his acceptance of this practice is evidenced by his paying the special charge for departure from it. It is argued by the defendant that, if there was an undertaking to search for the deposits, it would not be an undertaking to find the deposits if there, but the distinction seems unsubstantial. An agreement to search among deposits in the company's possession seems to mean an agreement to find and credit them. It is assumed in argument, too, that

the testimony shows an undertaking on the plaintiff's part to give the company timely notice of the making of a covering deposit, but it shows only an undertaking to notify the bookkeepers of deposits of money made late in the day before one o'clock; it does not refer to night deposits already in the bank. The difficulty does not lie there, but in the finding of a contract to search and credit the covering deposits if any.

The plaintiff testified that there was an arrangement that this should be done, or that this was an arrangement followed. But if it be assumed that this testimony is sufficient for an adjudication of a binding contract before April 12th, would there be sufficient to show such a contract after April 12th, when the practice was continued on the plaintiff's assurance that he would make the effort to stop the need of it? The company seems then not to have agreed to continue the searching as needed, and the charge to be made for it, but to have carried it on further only on sufferance, in the continuing expectation of being relieved of the problem. With respect to the second check it may be added, as already stated, that there is no showing that the covering deposit was made before the presentation of the anticipatory check. There was, in any event, no evidence of an agreement to hold a check awaiting a deposit, although the plaintiff had given the assurance that there would be one in time for the one o'clock report to the clearing house. The company may have waited in some instances, but under the circumstances this would seem to show no more than a gratuitous indulgence, not a binding contract. And for lack of the contract, the judgment must be affirmed.

*Judgment affirmed, with costs.*