UNIVERSITY NATIONAL BANK *v.* CHARLES R. WOLFE ET AL.

[No. 12, September Term, 1976.]

*Decided March 1, 1977.*

The cause was argued before MURPHY, C. J., and SINGLEY, SMITH, DIGGES, LEVINE, ELDRIDGE and ORTH, JJ.

*Richard W. Emory*, with whom were *Benson Everett Legg, Venable, Baetjer & Howard, Jerome E. Korpeck, Peter R. Hartogensis* and *Wheeler & Korpeck* on the brief, for appellant.

*Richard M. Cooper*, with whom were *Williams, Connolly & Califano, Edward Bennett Williams, Paul Martin Wolff* and

*Frank W. Wilson* on the brief, for Watkins Glen Limited Partnership, part of appellees. No brief filed on behalf of other appellee.

ORTH, J., delivered the opinion of the Court.

This appeal concerns a checking account and the mutual rights and liabilities of the bank and its depositor which arise from it. As the circumstances are such that provisions of the Uniform Commercial Code [1] on the subject are inapplicable we look to the common law. At stake is almost a quarter of a million dollars paid by the bank and charged against funds standing to the credit of the depositor. The depositor claimed that the payments were improper and sued the bank for damages. The jury returned a verdict in favor of the depositor and the bank appealed from the judgment entered to the Court of Special Appeals. We granted certiorari before decision by that court. We reverse the judgment and remand for a new trial because the trial judge, by his peremptory instructions, found as a matter of law what was properly for the determination of the jury.

I

Almost a hundred years ago this Court found that the relationship between a bank and its depositor was "perfectly well settled". *Hardy v. Chesapeake Bank,* 51 Md. 562, 585 (1879). The relationship, which has been universally recognized, 5A *Michie on Banks and Banking* § 1 (1973), and consistently followed in this State to the present time, is that of debtor and creditor, with the rights between the parties considered as contractual, and derived by implication from the banking relationship unless modified by the parties. *Sand & Gravel Corp. v. Hospelhorn,* 172 Md. 279, 287, 191 A. 701 (1937); *Terminals Co. v. Hospelhorn,* 172

---

1. Maryland Code (1957, 1964 Repl. Vol.) Art. 95B. Section 2, ch. 49, Acts 1975, effective 1 July 1975, enacted a new article of the Code of Maryland designated "Commercial Law" and provided that article 95B, in its entirety "is hereby recodified and renumbered as Title 1 through 10 of said article." Maryland Code (1957, 1964 Repl. Vol.) Art. 95B and the new codification is hereinafter cited as "UCC".

Md. 291, 298, 191 A. 707 (1937); *Pritchard v. Myers,* 174 Md. 66, 76, 197 A. 620 (1938); *Magness v. Trust Co.,* 176 Md. 528, 531, 6 A. 2d 241 (1939); *Union Trust Co. v. Soble,* 192 Md. 427, 430-431, 64 A. 2d 744 (1949); *Keller v. Frederickst'n Sav. Inst.* 193 Md. 292, 296, 66 A. 2d 924 (1949); *Taylor v. Equitable Trust Co.,* 269 Md. 149, 155-156, 304 A. 2d 838 (1973).

We have said that an action in tort will lie for a breach of the implied contract between a bank and its depositor. *Taylor v. Equitable Trust Co., supra,* 269 Md. at 156 (citing *Siegman v. Equitable Trust,* 267 Md. 309, 313, 297 A. 2d 758 (1972) as "following in the venerable footsteps of *Rolin v. Steward,* 14 C. B. 595, 139 Eng. Repr. 245 (1854) and *Marzetti v. Williams* 1 B & AD 415, 109 Eng. Repr. 842 (1830)"). We noted that this line of cases dealt primarily with wrongful dishonor of a depositor's checks,[2] and saw "no reason why the same general principles are not equally applicable to a wrongful disbursement of funds belonging to a depositor." *Taylor* at 156. There is strong authority that "an action in tort for conversion will lie by a depositor to enforce liability of the bank of deposit for the amount of depositor's checks which have been wrongfully paid by the bank", 5B *Michie on Banks and Banking* § 350. *Taylor,* in which there was a count of the declaration alleging negligence in the diversion of funds by the bank, gave clear indication that an action in tort for negligence will lie for improper payment by the bank of funds standing to the credit of a depositor. *See* "Comment in 2 Bender's U.C.C. Service, Hart and Willier § 12.35, at 12-129 (1972)" referred to in *Taylor* at 155.

The negligence of a bank in improperly paying funds drawn against a depositor's account plays a role apart from giving rise to a cause of action in tort. It has long been the law of this State that the rendering by a bank to a depositor of a periodical account, whether by balanced pass book or by the more modern and generally used detailed statements of deposits and withdrawals accompanied by the cancelled checks, imposes upon the depositor a duty to examine the

2. The tort of wrongful dishonor was recognized in Maryland in *Magness v. Trust Co.,* 176 Md. 528, 6 A. 2d 241 (1939).

account rendered and the items paid within a reasonable time and with ordinary care, and to report any errors discovered without unreasonable delay. *Union Trust Co. v. Soble, supra,* 192 Md. at 433; *Hardy v. Chesapeake Bank, supra,* 51 Md. at 591. This is in accord with the law generally held. *See* Annot. 103 A.L.R. 1147 (1936); 5B *Michie on Banks and Banking* § 283 (1973) and 5A *Michie on Banks and Banking* § 192 (1973). "The object of requiring such an examination is to afford seasonable notice to the bank of any unauthorized payment in order that it may have the opportunity to retrieve against losses." *Herbel v. Peoples State Bank of Ellinwood,* 228 P. 2d 929, 935 (Kansas 1951). Thus, there are defenses available to the bank on a claim that it paid unauthorized items. A depositor may be precluded, that is estopped, from asserting such a claim against a bank by reason of his negligence, when, within a reasonable time, he does not fulfill his duty to examine the statement and paid items made available to him by the bank and report any improper payments which he discovers or should have discovered. This was the teaching of *Union Trust Co. v. Soble, supra,* and *Hardy v. Chesapeake Bank, supra,* which followed the view of other jurisdictions. It is still the law of this State applicable to circumstances not covered by the UCC.[3]

These defenses available to a bank, however, must be viewed in light of any negligence on the part of the bank. The rule generally followed is as set out in 5A *Michie on Banks and Banking* § 192:

> "Though it is the law that a depositor is charged with knowledge of errors in the account which a reasonable examination of the bank's statements and vouchers within a reasonable time after their receipt by him would disclose, and that a failure to notify the bank of any errors of which he is thus charged with knowledge may estop him from disputing the correctness of the account to the

---

**3.** *See* UCC § 4-406, "Customer's duty to discover and report unauthorized signature or alteration."

extent that the bank was pecuniarily prejudiced by his failure to give notice of the errors, *if the ignorance of the bank of the error in the account arose from its own negligence,* then it cannot claim that the depositor is estopped because he did not dispel an ignorance which in contemplation of law did not exist, because the bank, in the exercise of reasonable care, should have had knowledge of the erroneous state of the account." (emphasis added).

In short, the depositor is not duty bound to protect the bank against its own negligence. Only where the bank has exercised reasonable care in the exercise of its duties, may it properly invoke equitable defenses against a depositor. The negligence of a depositor does not relieve the bank of its continuing duty to exercise reasonable care. This is not a new concept in the law. In *Leather Manufacturers' Nat. Bank v. Morgan,* 117 U. S. 96, 112, 6 S. Ct. 657, 29 L. Ed. 811 (1886), the Court said, quite tersely:

"Of course if the [bank's] officers, before paying the altered checks, could by proper care and skill have detected the forgeries, then it cannot receive a credit for the amount of those checks, even if the depositor omitted all examination of his account."

*See Gladstone Exch. Nat. Bank v. Keating,* 53 N. W. 1110, 1111 (Mich. 1892); *Herbel v. Peoples State Bank of Ellinwood, supra,* 228 P. 2d at 936 and cases therein cited; *First Nat. Bank of Philadelphia v. Farrell,* 272 F. 371, 377 (3rd cir.) *cert. denied,* 257 U. S. 634 (1921). This is in no way contrary to *Hardy v. Chesapeake Bank, supra,* and *Union Trust Co. v. Soble, supra.* As we read those cases, negligence on the part of the banks was not an issue.[4]

## II

On 21 August 1972 Watkins Glen Limited Partnership (the Depositor) sued University National Bank (the Bank) in

---

4. This principle regarding the negligence of the bank is carried over into the Uniform Commercial Code. *See* UCC § 4-406 (3).

the Circuit Court for Montgomery County seeking damages on the ground that the Bank had improperly paid checks drawn on the Depositor's account with the Bank.[5] The declaration sounded in breach of contract (1st count), breach of trust (2nd count) and negligence (3rd count). The allegations were that the Bank was obligated to honor payments from the Depositor's account only upon checks bearing two authorized signatures and that it paid checks bearing only one signature. At the time of the trial on the merits the law of the case under the decision of this Court in *Wolfe v. University Nat'l Bank*, 270 Md. 70, 74, 310 A. 2d 558 (1973) was that UCC § 4-406 was inapplicable. That decision was rendered upon appeal from the grant by the court below of summary judgment for the Bank under UCC § 4-406 (4) which, without regard to care or lack of care of either the customer or the bank, precludes a customer from asserting against a bank an unauthorized signature or any alteration on a check unless within one year from the time a statement and items are made available to a customer he discovers and reports the unauthorized signature or any alteration. The court took the checks to be infirm because of an "unauthorized signature". We found that the one signature on each of the challenged checks was an authorized signature so that the infirmity lay not in the presence of an unauthorized signature or alteration within the contemplation of UCC § 4-406 (4) but in the absence of a second authorized signature. Thus, the action was not barred by UCC § 4-406, and we reversed the judgment. In remanding the case for further proceedings we observed, without intimating what success, if any, the Depositor

---

5. The Partnership had three general partners, Charles R. Wolfe, Per Olof Holtze and Wolfgang H. Altmann. Holtze died in November 1971, and at the time of the suit Altmann was "unavailable." Wolfe was a party plaintiff but the trial court ruled that he was not a proper party. That ruling was not challenged.

The Partnership's dealings leading to the suit were originally with Montgomery Banking and Trust Company. On 1 July 1970 that bank and University National Bank merged. University National Bank assumed all the obligations of Montgomery Banking and Trust Company. There being no reason to distinguish between the banks in this opinion, the "Bank" refers to Montgomery Banking and Trust Company before the merger and to University National Bank thereafter.

might achieve, that "[t]here may well be defenses available to the Bank, never developed during the procedural stage of the controversy, which could effectively preclude recovery." We suggested that such defenses might encompass those available at common law, if the provisions of Titles 3 and 4 of the UCC proved inapplicable. *Wolfe v. University Nat'l Bank, supra*, 270 Md. at 75. In light of our ruling, we see no provisions of Titles 3 and 4 of the UCC which are applicable, thus proceed on the basis, as did the court and parties below, that only common law defenses are available to the Bank.

Evidence adduced at the trial by way of testimony and stipulated facts and exhibits showed that the Depositor delivered to the Bank an "Authority to Open Deposit Account" dated 31 December 1969 stating its desire to establish with the Bank a deposit and checking account to be known as Watkins Glen Limited Partnership. It provided:

"Checks and orders for the payment of money withdrawing funds from said account may be signed by:
Per-Olof Holtze and Charles R. Wolfe, OR
Charles R. Wolfe and Paul S. Waymoth."

As we have indicated, Wolfe and Holtze were general partners of the Depositor. Waymoth performed bookkeeping services for the Depositor. An authorized signature card under the same date bore the signatures of Holtze, Wolfe and Waymoth.

The account established on 31 December 1969 superseded an account opened with the Bank on 10 March 1969 in the name of Watkins Glen Joint Venture by completion and delivery of a form like that used on 31 December 1969. This prior account provided for the withdrawal of funds by checks and orders signed by any two of Holtze, Wolfe and Wolfgang H. Altmann, the third general partner.

Each month the Bank sent the Depositor a statement of the account accompanied by the cancelled checks debited. The statements were reconciled each month with the Depositor's records by an employee of the Depositor who

was a "graduate accountant with good experience." Forty out of about one hundred checks drawn on the Depositor's accounts and paid by the Bank at various times to 30 September 1970 bore only one signature. The Depositor made no complaint to the Bank concerning these checks until 15 March 1972.

Although initially directed to all of the one-signature checks, the action instituted by the Depositor was later limited to seven of them. The first was dated 6 February 1970 and the last 12 August 1970. Two were paid in February, and one in each of March, April, May, July and August. They were debited on and returned with the statement sent by the Bank at the end of the month in which they were paid. Only Waymoth signed as drawer on the first, and only Holtze signed as drawer on the other six. All of the seven checks were payable to "Holtze Corp.", which had entered into a contract with the Depositor on 28 May 1969 as a general contractor for the construction of fifty-nine town houses on land owned by the Depositor. The aggregate amount of the seven checks was $222,900.

As a result of rulings on various motions for directed verdicts and peremptory instructions given pursuant thereto,[6] all that was left for the jury to determine upon submission of the case was whether the Bank had established by a preponderance of the evidence either that (1) the conduct of the Depositor precluded recovery under the doctrine of estoppel or (2) the Depositor had received the use and benefit of the funds paid under the seven checks. If the jury found that either of these two defenses had been proved, its verdict was to be for the Bank. If it found that neither had been established, then it was to assess damages not to exceed $222,900 against the Bank and in favor of the Depositor.

6. Wolfe, individually, was dismissed as a plaintiff. Counts one and two were ruled out as causes of action. The Bank was declared to be negligent as a matter of law under count three. Punitive damages were excluded. The Bank was to be held liable to the Depositor for damages in an amount to be determined by the jury, but not to exceed $222,900, unless the jury found that recovery was precluded under the doctrine of estoppel or because the Depositor had received the use and benefit of the proceeds of the seven checks. The court denied a motion for a directed verdict made by the Bank at the close of all the evidence.

The jury returned a verdict under count 3 in favor of the Depositor in the amount of $222,900. The Bank's motion for judgment n.o.v. or, in the alternative, for a new trial, was heard and denied. The following judgments were entered:

> "Judgment on Count III in favor of [the Depositor] against the [Bank] for the sum of Two Hundred Twenty Two Thousand Nine Hundred and 00/100 Dollars ($222,900.00) current money with interest from October 1, 1975 and costs."

> "Judgment in favor of the [Bank] as to [the Depositor] on Count I for Costs."

> "Judgment in favor of [the Bank] on Counts II and III in regard to Punitive Damages for Costs."

> "Judgment in favor of [the Bank] as to Plaintiff Charles R. Wolfe, individually for costs."

### III

When the Bank received the Depositor's money on deposit in the checking account, there arose, as we have seen, the contractual obligation to pay the funds only as authorized. The obligation here was not only that implied in banking relations, for example to pay the Depositor's checks only to persons to whom they were made payable or upon their genuine endorsements, *Union Trust Co. v. Soble, supra,* 192 Md. at 430-431, but was also that evidenced by the "Authority to Open Deposit Account" requiring that the checks be signed by two designated drawers. We shall assume only for the purpose of the determination of this appeal, and expressly do not decide, that the trial judge was correct in determining that this "Authority" and the accompanying signature card constituted a contract between the Bank and the Depositor whereby a check was to be paid and charged against funds to the Depositor's credit only when drawn by two persons, Wolfe and Holtze or Wolfe and Waymoth, as evidenced by their signatures on the check.[7]

---

7. When writings alone evidence a contract, it is for the court to construe the writings, and determine whether there was a contract, and, if so, what

Proceeding on the assumption that there was a written contract between the Bank and the Depositor requiring that checks be paid only upon two authorized signatures, we note the well settled rule that the parties by their conduct may waive the requirements of a written contract. In *Taylor v. University Nat'l Bank*, 263 Md. 59, 63, 282 A. 2d 91 (1971), we pointed to our comment in *Pumphrey v. Pelton*, 250 Md. 662, 670, 245 A. 2d 301 (1968) that "the conduct of the parties to a contract may be evidence of a subsequent modification of their contract, citing 2 *Williston on Contracts* § 623 (3rd ed. Jaeger 1959); *Saul v. McIntyre*, 190 Md. 31, 36, 57 A. 2d 272 (1948); *Evergreen Amusement Corporation v. Milstead*, 206 Md. 610, 616-617, 112 A. 2d 901 (1955); and *Solomon's Marina Inc. v. Rogers*, 221 Md. 194, 198, 156 A. 2d 432 (1959)." This is so notwithstanding a written agreement that any change to a contract must be in writing.[8] *Taylor v. University Nat'l Bank, supra,* 263 Md. at 63; *Chas. Burton Bldrs. v. L & S Constr.*, 260 Md. 66, 87-89, 271 A. 2d 534 (1970); *Freeman v. Stanbern Const. Co.*, 205 Md. 71, 78-79, 106 A. 2d 50 (1954); *Hoffman v. Glock*, 20 Md. App. 284, 288-289, 315 A. 2d 551 (1974). We held in *Freeman v. Stanbern Const. Co., supra,* 205 Md. at 79 that a subsequent modification of a written contract may be established by a preponderance of the evidence. Citing *Bartlett v. Stanchfield*, 148 Mass. 394, 19 N. E. 549 (1889), the Court of Special Appeals in *Hoffman v. Glock, supra,* 20 Md. App. at

that contract was. Severin v. Green, 166 Md. 305, 307, 170 A. 731 (1934). *See* Gordy v. Ocean Park, Inc., 218 Md. 52, 60, 145 A. 2d 273 (1958). The Bank contended that under these documents it is not clear whether checks required more than one signature. We observe that there are discrepancies between the "Authority" and the signature card, so that when read together, as they must be by their terms, the position of the Bank is at least arguable. For example, a "Joint Agreement" on the reverse side of the signature card provided, contrary to the "Authority", that the funds in the account "shall . . . be subject to the check or receipt of either of them, or the survivor of them and payment to or on the check of either or the survivor shall be valid and discharge said Bank from liability." The "Joint Agreement" was signed only by Wolfe.

8. The "Joint Agreement" on the reverse side of the signature card executed by the Depositor in the case *sub judice*, see note 7 *supra*, provided that "[t]he rights or authority of the Bank under this agreement shall not be changed or terminated by said depositors or either of them except by written notice to said Bank which shall not affect transactions theretofore made."

289, set out what Mr. Justice Holmes, then a member of the Supreme Judicial Court of Massachusetts said in *Bartlett,* at 395:

> "Attempts of parties to tie up by contract their freedom of dealing with each other are futile. The contract is a fact to be taken into account in interpreting the subsequent conduct of the plaintiff and the defendant, no doubt. But it cannot be assumed, as matter of law, that the contract governed all that was done until it was renounced in so many words, because the parties had a right to renounce it in any way and by any mode of expression they saw fit. They could substitute a new oral contract by conduct and intimation, as well as by express words."

It is manifest, as the Court of Special Appeals concluded in *Hoffman v. Glock, supra,* 20 Md. App. at 289, that whether subsequent conduct of the parties amounts to a modification or waiver of their contract is generally a question of fact to be decided by the trier of fact.

At the close of all the evidence the trial judge heard a motion "that the court find as a matter of law that the bank was negligent." He found the Bank "guilty of negligent conduct in the honoring of these checks as a matter of law. . . ." He "ruled" that the Bank paid the checks on one signature "in violation of their contractual obligation to pay out on two signatures." He observed that the Bank "had offered no evidence in the way of excuse or justification and, in fact, all of the evidence which they, themselves, offered was that it did not comport with the standard of reasonable care that should have been exercised." The Bank excepted to the finding.

In charging the jury, the trial judge here explained that the Depositor claimed in count one of its declaration that the Bank "breached its contractual obligation" to the Depositor and in count three that the Bank "was negligent in maintenance of the checking account." He said:

> "The Court has ruled as a matter of law, and you

are bound by this ruling, that the Defendant Bank was, in fact, negligent under Count Three of the Declaration in paying out the seven checks in question on one signature in violation of its contract with the depositor, Watkins Glen.

Now, by that I am saying that there will be a finding for the Plaintiff on Count Three of the Declaration unless you find in favor of the Defendant because of the two affirmative defenses which I will explain to you.

I have held that the Plaintiff has met its burden of proof, the partnership in this case, and you will not consider whether they have or haven't because the Court is telling you as a matter of law they have on Count Three.

On Count One your verdict will be, and I instruct you, for the Defendant. The reason for that is that while it is true that the relationship between a bank and a general depositor is contractual in nature, a bank is liable for negligence if it wrongfully disburses funds of a depositor. I have told you they are liable under Count Three as a matter of law, so they can't also be liable in contract.

That does not mean to imply that the Plaintiff has not shown a breach of contract, because they have, but their recovery is in negligence under Count Three and your verdict will be for the Defendant on Count One of the Declaration because, of course, a party cannot recover twice for the same loss, and both Count One and Count Three seek to recover the $222,900 on different theories."

It is clear from the comments of the judge in ruling on the motion made at the close of all the evidence and in his peremptory instructions pursuant to the grant of that motion that the finding as a matter of law that the Bank was negligent was based upon a finding as a matter of law that it had breached the contract providing the conditions of payment. In other words, the Bank was negligent because it

did not use reasonable care to fulfill its contractual obligation to permit the Depositor's funds to be withdrawn only upon two authorized signatures and, on the contrary, honored checks bearing only one signature. We think the judge erred in finding as a matter of law that the Bank breached the contract. Therefore, his finding as a matter of law that the Bank was negligent was erroneous because it was predicated upon the finding that the contract had been breached.

In *Alexander v. Tingle*, 181 Md. 464, 30 A. 2d 737 (1943) we construed Rule 4 of the General Rules of Practice and Procedure, which in material part was the same as our present Maryland Rule 552 a. We concluded, at 470, "that the correct interpretation of Rule 4 is that any party may properly move for a directed verdict in his favor on any issue as to which his opponent has the burden of proof, but not for an instructed verdict on any issue as to which the moving party has the burden of proof, unless the facts are uncontroverted, or the parties have agreed as to the facts." Thus, it is the duty of the court to decide questions of law, and this duty extends to all jury cases. We stated in *Dunstan v. Bethlehem Steel Co.*, 187 Md. 571, 578, 51 A. 2d 288 (1947) that the duty of the court in this respect was recognized in *Alexander v. Tingle, supra*. We observed that the court in that case "distinguished between (a) uncontradicted evidence which a jury might disbelieve and (b) uncontroverted or undisputed facts, which present only a question of law." Referring to this in *Peroti v. Williams*, 258 Md. 663, 669, 267 A. 2d 114 (1970), we declared: "Only in the second case is the court justified in removing an issue from the jury's consideration." It was our understanding "that for evidentiary facts and inferences to be 'uncontroverted or undisputed' there must be either actual or constructive acquiescence in their truth on the part of all affected parties." *Id.*, at 669. *See Salisbury Beauty Schools v. St. Bd.*, 268 Md. 32, 39, n. 6a, 300 A. 2d 367 (1973); *Pennsylvania R. Co. v. Stallings*, 165 Md. 615, 619, 170 A. 163 (1934). *Cf. Lloyd v. Bowles*, 260 Md. 568, 570, 273 A. 2d 193 (1971) and *Smith v. Bernfeld*, 226 Md. 400, 405, 174 A. 2d 53 (1961)

(distinguishing between uncontradicted and uncontroverted evidence).

In light of these principles it is obvious that the trial judge erred in granting the Depositor's motion for a directed verdict that the Bank was negligent. The Depositor carried the burden of proving negligence on the part of the Bank, and for the verdict to be properly directed in favor of the Depositor the facts and inferences sufficient to establish that negligence had to be uncontroverted or undisputed. They would be uncontroverted or undisputed if there were actual or constructive acquiescence in their truth on the part of all the affected parties. There was no such acquiescence here. Thus the facts and inferences did not present only a question of law and the question of negligence was not for the court but for the jury to determine.

As we have indicated, the determination of negligence by the court was predicated upon a breach of the contract that checks would be paid only on two authorized signatures. That is, the court found that the Bank was negligent because it failed to use due care to see that checks were paid only as agreed, namely when signed by two authorized persons as the drawers. The contract was the heart of the negligence issue. If the contract had in fact been modified to waive the two signature requirement, the Bank would not have been negligent. We see no actual or constructive acquiescence in the truth of the evidentiary facts and inferences regarding the conditions under which the checks were to be honored on the part of all affected parties. It is patent that the Bank controverted and disputed the evidence. The Bank made its position clear from the start. A statement which included stipulated facts and exhibits was filed prior to trial. It set out the position of each of the Depositor and the Bank. The Depositor contended that "under the documents governing the account and the conduct of the parties and their agents, all checks drawn on the Watkins Glen account required two authorized signatures." The Bank contended that "under these same documents and conduct it is not clear whether checks required more than one signature, that Plaintiffs authorized checks to be issued with one signature, and that

Plaintiffs are barred by their own negligence and by estoppel from complaining about Defendant paying checks with one signature." Depositor specifically denied "any trust relationship, any negligence on its part, and any basis for compensatory or punitive damages." In arguing to the court on its motion for a directed verdict, the Bank urged that the Depositor "waived the requirement of two signatures by a continuous course of conduct." It pointed out: "[The Depositor] had 65 double signature checks, 40 single signature checks drawn on this account.[9] The checks will show that during the three-month period, which is the period that we are really dealing with in this case, of April, May, June and July there were 29 checks and 25 checks of them were single signature checks. . . . [W]e think there is clear and convincing evidence of the course of conduct which waived the requirement of double signature checks." There was evidence tending to show a course of conduct whereby the contract was modified or the two signature requirement waived. For example, almost 40% of all the checks drawn on the account had only one signature. There was a continued use by the Depositor of a check which contained a line for only one drawer's signature. Two of the one signature checks were payable to and endorsed by Wolfe himself. Wolfe was the sole drawer on one of the checks. Wolfe had on occasion authorized the issuance of checks with only one signature. No complaint about payment by the Bank of one signature checks was seasonably made after receipt of the monthly bank statement and cancelled checks, although the statements were regularly reconciled with the Depositor's records.[10] The Bank excepted to the grant of the motion

---

**9.** A stipulated exhibit listed 37 one signature checks. On cross-examination of Wolfe it was elicited that three one signature checks were not included in the list. Two of them, each in the amount of $1,000, were payable to Wolfe.

**10.** In Alexander v. Tingle, 181 Md. 464, 470, 30 A. 2d 737 (1943) we said:

"As the plaintiff in the instant case had the burden of proving all of the issues raised by the pleadings, and as the defendant had filed general issue pleas and, although not expressly denying, did not admit the truth of plaintiff's testimony, it could not be said that the facts were uncontroverted, therefore, the trial court correctly ruled when plaintiff's first prayer was rejected."

The Bank here pleaded the general issue and also a plea on equitable

regarding the negligence of the Bank and specifically objected to the instruction given pursuant thereto. We conclude that, in the circumstances, the court below could not properly direct a verdict as to the Bank's negligence in favor of the Depositor. We hold that the grant of the motion which precluded the jury from considering the issue of the Bank's negligence was error compelling reversal of the judgment.

The judge told the jury that although he had instructed them that the Bank was negligent as a matter of law, it did not necessarily mean that the Depositor would recover. "It only means that [the Depositor] fully met the burden of proving their case, because the bank has two affirmative defenses which you must consider in the case and give such weight from the evidence as you deem appropriate in opposition to the claim for the [Depositor]." Those two defenses, which the judge said had to be proved by the Bank by a preponderance of the evidence, were (1) that the Depositor had received the use and benefit of the funds and (2) that "the conduct of the [Depositor] was such as to mislead the bank into paying out on one signature" so that the Depositor was estopped from seeking recovery from the bank. With regard to estoppel, he said that the Bank alleged that Wolfe "acquiesced in or ratified the issuance of single signature checks from a continued course of conduct, and that his failure to object to this in the past or within a reasonable length of time precludes him, once again, from seeking any recovery". The judge added:

> "It is not enough, however, to show that the Plaintiff acquiesced in conduct or was guilty of negligent conduct where the bank had breached its contractual relationship. It must, in fact, be shown

grounds that the Depositor had ratified the course of dealing and conduct of the Bank.

We have noted that when the trial judge ruled on the motion he observed that the Bank had "offered no evidence in the way of excuse or justification" and, indicated that the evidence it offered "did not comport with the standard of reasonable care." We think it apparent that this statement was made in the context that the contract to pay checks only on two signatures was in full force and effect.

by the Defendant that the bank was misled to its detriment by his conduct."

As we have intimated, the determination that the Bank was negligent precluded it from asserting the defense of estoppel based on the conduct of the Depositor. Even assuming that the Bank received more than that to which it was entitled by the estoppel instruction, and even though within the limits of that instruction the jury was permitted to consider the conduct of the Depositor, the error in refusing to give to the jury the question of the Bank's negligence was not cured. The consideration by the jury of the Depositor's conduct in order to ascertain whether the contract providing the conditions for the payment of checks was modified or waived as a basis for a determination of negligence *vel non,* is a far cry from their consideration of such conduct in order to determine whether there had been acquiescence in or ratification of the Bank's negligence which had already been found as a matter of law to be proved. The estoppel charge did no more than confound the issue.

The judgment on the third count in favor of the Depositor against the Bank in the amount of $222,900 is reversed, and the case is remanded for a new trial. With respect to compensatory damages, the first count charging breach of contract, the second count charging breach of trust, and the third count charging negligence, were alternative ways of seeking the same relief for the alleged actions of the Bank. The judgment as entered in favor of the Depositor against the Bank under the third count was all that was required with respect to compensatory damages. It gave the Depositor the relief which it sought relating to compensatory damages under all three counts. As the trial court observed, the Depositor was entitled to only one recovery for the same loss. Thus, the entry of judgments in favor of the Bank under the first and second counts was improper insofar as compensatory damages were concerned, the matter having been fully resolved by the judgment under the third count. We vacate the judgment in favor of the Bank against the Depositor under the first count, which contained no claim for punitive damages, and we vacate the

judgment in favor of the Bank under the second count with respect to compensatory damages. However, it was within the province of the trial court upon the verdicts it directed to enter the judgments in favor of the Bank under the second and third counts with respect to punitive damages and to enter the judgment in favor of the Bank as to Wolfe, individually. The Depositor and Wolfe could have challenged these judgments by a cross-appeal. As they did not do so, those judgments are affirmed.

The effect of our holdings is that the new trial granted may be under the first, second and third counts of the declaration with Watkins Glen Limited Partnership as the plaintiff and the ad damnum limited to compensatory damages.

In light of the grant of a new trial, it is not necessary to reach the other questions presented by the Bank. To the extent that they have not been answered by our discussion of the law, they are properly to be considered only in relation to evidence adduced.

> *Judgment on count III in favor of Watkins Glen Limited Partnership against University National Bank for $222,900 with interest and costs, reversed.*
>
> *With respect to judgments in favor of the University National Bank:*
>
> *Judgments under counts II and III affirmed as to punitive damages;*
>
> *Judgment as to Charles R. Wolfe, individually, affirmed;*
>
> *Judgment under count I, and judgment under count II as to compensatory damages, vacated.*
>
> *Case remanded for a new trial in accordance with this opinion.*
>
> *Costs to abide the result.*